## S03A1169. FORTSON v. THE STATE.

(587 SE2d 39)

FLETCHER, Chief Justice.

A jury in Madison County convicted Tracy Lea Fortson of malice murder and related crimes for the killing of Douglas Benton.[1] Because we find that Fortson was denied the effective assistance of counsel when her attorney unnecessarily used a peremptory strike on a juror that had already been excused for cause by the trial court, we reverse and remand for a new trial.

1. The evidence presented at trial shows that on June 17, 2000, neighbors of Benton became concerned because they had not seen him since June 4, 2000. The neighbors alerted the police and informed them that they had seen Fortson at the victim's home on June 4. Fortson admitted to police that she had been present at the victim's home on that day.

Meanwhile, a farm manager in nearby Oglethorpe County found a suspicious cattle trough on his farm that had been painted camouflage and filled with cement. The farm manager contacted the police, who found the victim wrapped in shower curtains and entombed in

---

[1] The crimes were committed on or around June 4, 2000. On October 18, 2000, a grand jury indicted Fortson for malice murder, felony murder, two counts of aggravated assault, and attempted arson. On July 12, 2001, the jury convicted Fortson on all counts. The felony murder conviction and one of the aggravated assault convictions merged as a matter of law with the malice murder conviction, and on July 17, 2001, Fortson was sentenced to life in prison plus twenty years. Fortson moved for a new trial on August 13, 2001, and amended her motion on May 23, 2002. The trial court denied the motion on February 27, 2003, and Fortson filed her timely notice of appeal on March 24, 2003. The case was docketed in this Court on April 22, 2003, and oral argument was heard on July 21, 2003.

the trough. Police later determined that he had been killed by a single .22 caliber bullet wound to the head at close range and multiple stab wounds to the chest. The farm manager was familiar with Fortson because she used the farm to hunt turkey and deer.

Investigators obtained search warrants and discovered other evidence connecting Fortson to the crime. In Fortson's home, police found black, green, and beige spray paint that was the same type as that used on the cattle trough and on Fortson's mailbox, which had also been painted camouflage. Police also found a .22 caliber rifle and ammunition. The gun and bullets were later determined to be consistent with those that were used to kill the victim, although the police could not conclusively determine whether the bullet taken from the victim had come from Fortson's gun. Police also found a Wal-Mart receipt showing that Fortson had purchased a shower curtain on June 4, 2000. Police later learned that Fortson had also gone to Athens that day and purchased ten 80-pound bags of concrete and a cattle trough like the one in which the victim was found.

Police found concrete in the bed of Fortson's truck that was similar to that in which the victim had been encased. Police also found that scuff marks on the trees near the place where the victim was found matched marks on Fortson's truck.

At the victim's home, police found bloodstains in the sofa cushions and carpet. They also noticed a heavy smell of kerosene, and found a candle that had burned down to the stub under the sofa, indicating that someone had unsuccessfully attempted to set the house on fire.

After reviewing the evidence in the light most favorable to the jury's verdict, we conclude that there was sufficient evidence for a rational trier of fact to find Fortson guilty of the offenses of malice murder, attempted arson, and the related crimes.[2]

2. Fortson contends that she was denied effective assistance of counsel when her attorney unnecessarily used a peremptory strike on a juror that had already been excused for cause. The dispute involves Juror no. 8, a female juror. During voir dire, Juror no. 8 informed the court that she had spoken to the arresting officer about the case, and that her brother, husband, and son all worked in law enforcement. In spite of these concerns, the trial court denied Fortson's initial request to excuse Juror no. 8 for cause. After individual voir dire, therefore, Juror no. 8 remained on the list of jurors to which the parties would direct their peremptory strikes. Although she was still listed as Juror no. 8, she was in fact the fourth juror on the strike list because the names of jurors who had been excused for cause had

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

been crossed off the list.

Just before the parties proceeded to strike the jury, Fortson's attorney renewed his request to excuse Juror no. 8, although he improperly referred to her at that time as Juror no. 4. Reversing its earlier decision, the trial court granted the request, stating, "I think she is four on the list." The actual Juror no. 4 had already been excused for cause days earlier and was a male juror. It is clear from the record that both Fortson's attorney and the trial court intended to excuse Juror no. 8 at that time.

The parties then proceeded to silently strike the jury. Inexplicably, Juror no. 8 remained on the strike list and Fortson's attorney used his first peremptory strike to remove her. Fortson's attorney used his entire allotment of peremptory strikes.

In order to prevail on a claim of ineffective assistance of counsel, Fortson must show that the actions of her attorney were deficient and that there is a reasonable probability that the deficient conduct caused her actual prejudice.[3] The trial court found, and we agree, that Fortson's attorney acted deficiently when he unnecessarily used a peremptory strike on a juror that had already been excused for cause. At the motion for a new trial, Fortson's attorney testified that his use of a peremptory strike on the recently excused juror was due to simple neglect. The trial court's credibility judgment that the mistake made by Fortson's attorney was due to neglect rather than induced error was not clearly erroneous.[4]

Although the trial court denied Fortson's motion for a new trial because it concluded that Fortson had suffered no prejudice from the error, this Court has recognized that causing a defendant to unnecessarily use a peremptory strike on a juror that should have been excused for cause is per se harmful error.[5] "[I]t is well established in Georgia that peremptory strikes are invaluable."[6] Because Fortson's attorney used a peremptory strike on a juror who had already been excused for cause, we conclude that Fortson suffered actual prejudice, and the second prong of the *Strickland* test is met.

The trial court distinguished these prior holdings by ruling that it was not necessary to excuse Juror no. 8 for cause. We need not decide whether this juror was disqualified per se, however, since the trial court did in fact excuse her for cause. Because the trial court found that the juror was unfit to serve on the jury, Fortson was preju-

---

[3] *Strickland v. Washington*, 466 U. S. 668, 687-688 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985).

[4] *Powell v. State*, 276 Ga. 592, 594 (581 SE2d 13) (2003).

[5] *Bradham v. State*, 243 Ga. 638, 639 (256 SE2d 331) (1979); *Kirkland v. State*, 274 Ga. 778, 780 (560 SE2d 6) (2002).

[6] *Bradham*, 243 Ga. at 639.

diced by the fact that her attorney unnecessarily wasted a peremptory strike to excuse her. The trial court erred, therefore, in denying Fortson's motion for a new trial on the ground of ineffective assistance of counsel.

3. Fortson also contends that the warrants that authorized the search of her home and her truck violated the United States and Georgia Constitutions, as well as OCGA § 17-5-30. First, Fortson asserts that the application for the home warrant was defective because it contained vague and misleading statements and did not provide any basis for the magistrate to determine the reliability of the information. Second, Fortson argues that because the evidence that established probable cause for the truck warrant was obtained through the unconstitutional search of her home, the evidence obtained from the search of her truck should have been suppressed as "fruit of the poisonous tree."[7] Because both warrants were properly issued, we affirm the trial court's denial of Fortson's motion to suppress the evidence obtained during those searches.

Both the United States and Georgia Constitutions protect against "unreasonable searches and seizures."[8] The Georgia Bill of Rights, for example, provides that "no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the persons or things to be seized."[9] The Georgia legislature has also codified additional requirements for the proper issuance of search warrants.[10] In determining whether the state has shown probable cause, the magistrate must make a practical, common-sense decision whether, given the totality of the circumstances, there is a reasonable probability that the fruits, instrumentalities, or evidence of a crime will be found at a particular place.[11]

We will not disturb the magistrate's judgment on the credibility of the information and the informant unless that judgment is clearly erroneous.[12] In this case, the magistrate had enough information to judge the credibility of the information and the decision to issue the search warrants had ample support. At the beginning of the investigation, witnesses who reported the victim missing also reported that they had observed Fortson at the victim's home near the time he disappeared. The farm manager who located the victim's body on the Oglethorpe County farm told police that Fortson commonly used the

---

[7] *Duncan v. State*, 259 Ga. 278, 282 (379 SE2d 507) (1989).

[8] U. S. const. amend. IV; Ga. Const. art. I, sec. I, para. XIII.

[9] Ga. Const. art. I, sec. I, para. XIII.

[10] OCGA §§ 17-5-20 to 17-5-32 (governing search warrants).

[11] *State v. Stephens*, 252 Ga. 181, 182 (311 SE2d 823) (1984).

[12] *Tate v. State*, 264 Ga. 53, 54 (440 SE2d 646) (1994).

farm for hunting. The police officer who testified at the probable cause hearing stated that he had personal knowledge of the tumultuous relationship between Fortson, a former police officer, and the victim, and this knowledge was corroborated through interviews with the victim's personal friends. The police officer had also personally observed that Fortson's mailbox was painted in a similar camouflage fashion as the cattle trough in which the victim was found. Under the totality of the circumstances, the state properly obtained its search warrants in this case and it was not error for the trial court to admit the evidence obtained in the execution of those warrants.

Because the issuance of the search warrant for the house was proper, the evidence obtained later from the search of the truck was not tainted as "fruit of the poisonous tree."

4. Fortson also argues that the trial court erred by denying her motion for a change of venue. Fortson claims that Madison County was an inherently prejudicial trial setting because of the level of pretrial knowledge of the crime within the jury pool. Whether Fortson can receive a fair second trial in Madison County will depend on the level of knowledge or prejudice within the jury pool selected for her new trial, and we therefore decline to rule on that issue.

*Judgment reversed. All the Justices concur, except Sears, P. J., and Carley, J., who dissent.*

CARLEY, Justice, dissenting.

Because the majority relies on Georgia cases which either are distinguishable or should be reevaluated in the light of recent precedent of the Supreme Court of the United States, I dissent to Division 2 and to the reversal of the judgment of conviction which resulted in a sentence of life plus twenty years for malice murder, aggravated assault and attempted arson.

Citing *Kirkland v. State*, 274 Ga. 778, 780 (2) (560 SE2d 6) (2002) and *Bradham v. State*, 243 Ga. 638, 639 (3) (256 SE2d 331) (1979), the majority states that "this Court has recognized that causing a defendant to unnecessarily use a peremptory strike on a juror [who] should have been excused for cause is per se harmful error. [Cits.]" (Maj. op. p. 166.) However, *Kirkland v. State*, supra at 780 (2), actually held that defense counsel's failure to challenge a prospective juror for cause prejudiced the defendant since it resulted in "the seating of disqualified jurors. . . ." Thus, Kirkland "was tried before a biased jury" and was deprived of his federal constitutional right "to be tried by an impartial jury." *Kirkland v. State*, supra. Under those "extreme circumstances, prejudice is implied and counsel's error is harmful per se. . . ." *Kirkland v. State*, supra. In this case, however, the allegedly disqualified juror whom the trial court excused for cause and whom Fortson's trial attorney peremptorily challenged

was obviously never seated. The Supreme Court of the United States has rejected

> the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury. We have long recognized that peremptory challenges are not of constitutional dimension. [Cits.] . . . So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated. [Cits.]

*Ross v. Oklahoma*, 487 U. S. 81, 88 (108 SC 2273, 101 LE2d 80) (1988).

In dicta, *Kirkland v. State*, supra at 779 (2), also cites *Bradham*, a 4-3 decision, for the proposition that " '[w]hen a defendant in a felony trial has to exhaust his peremptory strikes to excuse a juror who should have been excused for cause the error is harmful.' [Cit.]" After *Ross*, however, most jurisdictions which "considered the issue either rejected [this] automatic reversal rule or reaffirmed their . . . prior opinions that the curative use of a peremptory challenge was not reversible error, absent prejudice to the defendant. [Cits.]" *State v. Hickman*, 68 P3d 418, 420 (II) (B) (Ariz. 2003). Then in *United States v. Martinez-Salazar*, 528 U. S. 304, 317 (III) (120 SC 774, 145 LE2d 792) (2000), the Supreme Court answered "the question left open in *Ross*" and held that "a defendant's exercise of peremptory challenges pursuant to [Fed. Rule Crim. Proc.] 24 (b) is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause." OCGA § 15-12-165, like Federal Rule of Criminal Procedure 24 (b), provides only that the parties to a criminal case may peremptorily challenge a certain number of jurors. Thus, under either federal or state law, the use of a peremptory challenge, in an attempt to insure the constitutional guarantee of trial by an impartial jury, even if due to an error of the trial court or of counsel, simply does not constitute the deprivation or loss of the challenge. *United States v. Martinez-Salazar*, supra at 315-316 (III); *State v. Fire*, 34 P3d 1218, 1224 (Wash. 2001). If the defendant "is subsequently convicted by a jury on which no biased juror sat, he has not been deprived of any rule-based or constitutional right." *United States v. Martinez-Salazar*, supra at 307. Since *Martinez-Salazar*, several additional state supreme courts have adopted the rule "that the curative use of a peremptory challenge violates neither a constitutional right, nor a rule-based or statute-based right." *State v. Hickman*, supra at 421-422 (II) (C). See also *Green v. Maynard*, 564 SE2d 83, 86 (S.C. 2002). As some of those courts have pointed out, the automatic reversal rule of *Bradham* does not level the playing field,

but tilts it in favor of the defendant. *State v. Hickman,* supra at 426 (III) (C); *State v. Lindell,* 629 NW2d 223, 248-249 (V) (D) (Wisc. 2001).

The majority quotes the rationale of *Bradham* as follows: "[I]t is well established in Georgia that peremptory strikes are invaluable. *Bradham v. State,* [supra] at 639 [(3)]." (Maj. op. p. 166.) However, acknowledgment of the role of the peremptory challenge in reinforcing a defendant's right to trial by an impartial jury does not preclude recognition that such challenges are auxiliary. *United States v. Martinez-Salazar,* supra at 311 (II). This principle was perhaps best articulated by the author of the majority opinion in the instant case:

> The exercise of peremptory strikes has long been recognized as a procedure created to assist litigants in obtaining a fair and impartial jury and not an independent substantive right. The substantive right involved is the right to an impartial jury and peremptory strikes are merely one possible procedure that can be used to obtain such a jury. [Cits.]

*Barner v. State,* 263 Ga. 365, 367 (4) (434 SE2d 484) (1993).

In holding that defense counsel's unnecessary use of a peremptory challenge on a disqualified juror in a felony trial is harmful per se where such challenges are exhausted, *Bradham,* supra at 639 (3), relied solely on the very different principle that the unnecessary peremptory strike is *harmless* per se where the defendant did *not* have to exhaust his peremptory challenges in order to strike the disqualified juror. See *Foster v. State,* 240 Ga. 858, 859 (2) (242 SE2d 600) (1978). That principle was subsequently abandoned in *Harris v. State,* 255 Ga. 464, 465 (2) (339 SE2d 712) (1986), which "held that '(t)he defendant's use of his peremptory strikes will . . . no longer play a role in our evaluation of the harm caused by the refusal to strike an unqualified juror.' [Cit.]" *Wallace v. State,* 275 Ga. 879, 881 (3) (572 SE2d 579) (2002) (Fletcher, C. J.). Accordingly, the mere exhaustion or waste of peremptory strikes should not dictate that a given action regarding a disqualified juror is either invariably harmless or necessarily harmful. Instead, the focus under current Georgia law should be on whether any unqualified juror was seated as the ultimate result of errors with respect to jurors challenged for cause. See *Kirkland v. State,* supra at 780 (2). The trial court's ruling did not "result in the seating of any juror who should have been dismissed for cause. . . . [T]hat circumstance would require reversal. [Cits.]" *United States v. Martinez-Salazar,* supra at 316 (III). In my opinion, therefore, *Bradham,* supra at 640 (3), should not have disapproved this Court's previous holding that a defendant who uses his peremptory strikes to remove disqualified jurors does not meet his burden of

affirmatively showing reversible error where he does not complain about the inclusion of any other jurors. *Kemp v. State*, 226 Ga. 506, 507 (2) (175 SE2d 869) (1970). See also *Patterson v. State*, 239 Ga. 409, 411 (1) (238 SE2d 2) (1977). Accordingly, *Bradham* and those cases which have followed it should be overruled, including the following: *McKinney v. State*, 254 Ga. 503 (330 SE2d 884) (1985); *Hutcheson v. State*, 246 Ga. 13, 14 (2) (268 SE2d 643) (1980); *Parisie v. State*, 178 Ga. App. 857, 859 (2) (344 SE2d 727) (1986).

The requirement that a defendant show prejudice beyond the exhaustion or waste of peremptory strikes is consistent with harmless error review.

> [M]ost trial error, and even most constitutional error, is reviewed for harmless error. . . . "Virtually any error, under particular circumstances, can be harmless." [Cit.] . . . If important constitutional errors are subject to harmless error review, then, logically, a trial court's erroneous denial of a challenge for cause and the defendant's subsequent use of a peremptory challenge to cure that error should be subject to harmless error review. . . . A defendant's use of a peremptory challenge to cure a trial court's erroneous denial of a challenge for cause is an error in the trial process, and not an error affecting the framework of how a trial proceeds.

*State v. Hickman*, supra at 424-425 (III) (C) & fn. 7. If a trial court's error in causing the needless use of a peremptory strike is not inevitably harmful, then defense counsel's deficient conduct in the same regard is not necessarily prejudicial. One disturbing element of *Bradham* "is that it requires a new trial in cases where the trial was nearly perfect and the verdict is unquestionably sound." *State v. Lindell*, supra at 249 (V) (D). See also *State v. Hickman*, supra at 422 (II) (C). Given the reality that trial courts rule on challenges for cause, and attorneys exercise peremptory strikes, by the minute, often deciding between shades of gray on the spot and under pressure, "it seems incongruous that a defendant should receive a new trial simply because the trial judge [or defense counsel] made a mistake that had no impact on the reliability of the jury's verdict." *State v. Hickman*, supra at 425 (III) (C). See also *United States v. Martinez-Salazar*, supra at 316 (III). Where, as here, the attorney for an accused "wastes" a peremptory strike on a juror already excused for cause, that circumstance does not, in and of itself, create a reasonable probability that, but for counsel's actions, the result of the proceeding would have been different. *White v. State*, 939 SW2d 887, 900 (II) (O) (Mo. 1997); *Robinson v. State*, 1998 WL 380634 (Tex. App.-Beaumont) (not designated for publication, but may be cited pursu-

ant to Rule 47.7 of Texas Rules of Appellate Procedure). Because Fortson has failed to demonstrate such a probability, as she has not shown that any disqualified juror was ever seated, her conviction should not be reversed on the basis of her trial attorney's mistaken use of a peremptory strike.

I am authorized to state that Presiding Justice Sears joins in this dissent.

DECIDED OCTOBER 6, 2003.

*Cook, Noell, Tolley, Bates & Michael, Edward D. Tolley, Ronald E. Houser*, for appellant.

*Robert W. Lavender, District Attorney, Thurbert E. Baker, Attorney General, Jason C. Fisher, Assistant Attorney General*, for appellee.