## A10A2281. SHIELDS v. THE STATE.
(706 SE2d 187)

BLACKWELL, Judge.

Dante Terrance Shields was tried by jury and convicted of several crimes in connection with a home invasion and attempted armed robbery in Hall County.[1] Shields then moved for a new trial, claiming that he was deprived at trial of the effective assistance of counsel because his lawyer, among other things, misunderstood the number of peremptory strikes to which he was entitled during jury selection and failed to object to certain evidence that reflected badly upon Shields's character.[2] After the trial court denied his motion for a new trial, Shields brought this appeal. We see no error and affirm.

To prevail on his claim of ineffective assistance of counsel, Shields must prove both that the performance of his lawyer at trial was deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Shields must show that his lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. at 687-688; see also *Kimmelman v. Morrison*, 477 U. S. 365, 381 (II) (C) (106 SC 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Shields must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, supra, 466 U. S. at 694 (III) (B); see also *Williams v. Taylor*, 529 U. S. 362, 391 (III) (120 SC 1495, 146 LE2d 389) (2000). This burden, although not impossible to carry, is a heavy one. See *Kimmelman*, supra, 477 U. S. at 382 (II) (C). We think Shields has failed to carry his burden.

1. We begin with Shields's claim that his lawyer was ineffective

---

[1] More specifically, Shields was convicted of five counts of aggravated assault, three counts of attempted armed robbery, one count of burglary, and one count of battery. For these crimes, Shields was sentenced to a term of 18 years of imprisonment, followed by 32 years on probation.

[2] When we refer in this opinion to Shields's lawyer, we refer to the lawyer who represented Shields at trial. A different lawyer represented Shields at the hearing on the motion for new trial, and yet another represents Shields on appeal.

because he misunderstood the number of peremptory challenges to which Shields was entitled during jury selection. Under OCGA § 15-12-165, a defendant charged with a felony for which the State does not seek the death penalty may exercise nine peremptory challenges in the selection of the jury, and the State is entitled to the same number. Shields's lawyer, however, mistakenly believed that Shields was only entitled to six peremptory challenges. Although Shields's lawyer asked the trial court whether each party would be entitled to exercise six peremptory challenges, the trial court either shared his mistaken belief that six was the usual number of challenges or misunderstood that the parties, although entitled to more challenges, had agreed to exercise no more than six each:

> DEFENSE COUNSEL: Your Honor, we're going to pick a jury at 12:00 with six strikes a side and then two alternates with how many strikes?
> THE COURT: I'm going to let you pick a jury of 12 and then three alternates if I have — still have the right number of jurors to allow you to do that.
> DEFENSE COUNSEL: With six strikes a side to pick the 12?
> THE COURT: Correct.

In any event, Shields's lawyer proceeded to strike a jury with the understanding that he had six peremptory challenges. Shields's lawyer ultimately exercised only five of these challenges.

(a) We consider first whether the fact that Shields's lawyer misunderstood the number of peremptory challenges to which Shields was entitled is sufficient to establish that his representation of Shields at trial was objectively unreasonable, and we conclude that it is not. As we consider this question, we bear in mind the admonition of the United States Supreme Court that

> [j]udicial scrutiny of counsel's performance must be highly deferential. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland,* supra, 466 U. S. at 689 (III) (A). And although the thinking of the lawyer may be relevant to our inquiry, we must remember that our inquiry properly is focused on what the lawyer

did or did not do, not what he thought or did not think.[3] Here, Shields's lawyer exercised five peremptory challenges in striking a jury and did not exercise another. To establish deficient performance, Shields must overcome the "strong presumption" that conducting jury selection in this way fell "within the wide range of professional assistance." We think he has failed to overcome the presumption.

Which, and how many, prospective jurors to strike is a quintessential strategic decision.[4] Shields's lawyer admitted that his comments to the trial court before jury selection commenced — in which he attempted to confirm his belief that Shields and the State each were entitled to exercise six peremptory challenges — was not part of a strategy to reduce the number of peremptory challenges allowed, but instead was a result of his misunderstanding of the law. But his decisions about which prospective jurors to accept, and which to strike, certainly were strategic. Shields does not contend that these strategic decisions were unreasonable apart from the misunderstanding about the number of peremptory challenges to which Shields was entitled.[5]

Although it is clear that Shields's lawyer misunderstood the number of peremptory challenges to which Shields was entitled, it does not follow that this misunderstanding necessarily affected his strategic decisions to strike only five prospective jurors. If the lawyer reasonably would have made the same strategic decisions — even if he knew that Shields was entitled to nine strikes — it cannot be said that the mistake of law affected the conduct or performance of the

---

[3] In *Strickland*, the United States Supreme Court said that

[a] convicted defendant making a claim of ineffective assistance must identify the *acts or omissions* of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified *acts or omissions* were outside the wide range of professionally competent assistance.

466 U. S. at 690 (III) (A) (emphasis supplied); see also *Harrington v. Richter*, ___ U. S. ___ (IV) (A) (1) (131 SC 770, 178 LE2d 624) (2011) ("*Strickland* . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind."). In other words, it is the *conduct* of the lawyer, not his *thinking,* that we assess for reasonableness, even though the thinking of the lawyer may inform the reasonableness of his conduct.

[4] Relying on *Reid v. State*, 235 Ga. 378, 379 (1) (219 SE2d 740) (1975) and its progeny, the Supreme Court of Georgia and this Court repeatedly have cited "[t]he decisions on which witnesses to call, whether and how to conduct cross-examinations, what jurors to accept or strike, [and] what trial motions should be made" as examples of strategic and tactical decisions that "are the exclusive province of the lawyer after consultation with his client." See, e.g., *Upton v. Parks*, 284 Ga. 254, 257 (2) (664 SE2d 196) (2008); *Snelson v. State*, 286 Ga. App. 203, 204 (648 SE2d 647) (2007); *Long v. State*, 281 Ga. App. 356, 360 (636 SE2d 88) (2006); *Griffin v. State*, 281 Ga. App. 249, 251 (3) (635 SE2d 853) (2006); *Abernathy v. State*, 278 Ga. App. 574, 586 (3) (b) (630 SE2d 421) (2006); *Paige v. State*, 277 Ga. App. 687, 693 (4) (d) (627 SE2d 370) (2006).

[5] Shields does not claim, for example, that any of the five strikes actually exercised by his lawyer should have been used on other potential jurors.

lawyer. And it is conceivable that he might still have struck the jury in precisely the same way for strategic reasons, regardless of whether he thought he had six, nine, or twenty peremptory challenges. Because Shields bears the burden of proving deficient performance, and because our inquiry properly is focused on the reasonableness of what trial counsel did — not what he thought — we think that Shields, to establish deficient performance, must prove that his lawyer's misunderstanding of the law actually affected his decisions about which, and how many, prospective jurors to strike.[6]

The record does not prove that the lawyer's mistaken thinking actually affected his conduct in selecting a jury. Shields's trial lawyer was asked at the hearing on the motion for new trial whether he would have conducted voir dire and jury selection differently if he had known that he had nine strikes, and his responses to these questions do not establish that he certainly, or even probably, would have done so:

Q. Do you think you would have conducted your voir dire differently if you thought that you had nine strikes?

A. You know, that's a tough question. It just is. I hate to be ambivalent. I just don't know that I can answer that because I only used five of my — I only used five of my six strikes anyway. You know, stepping back in time, if I had known or been more properly aware of the fact of my nine strikes in all honesty it may — yes, it may have impacted the way I picked a jury.

Q. Now, in addition to your perhaps conducting voir dire differently, do you think that you would have struck the jury differently?

A. It's very difficult. I know you asked me to do it to, quote, unquote, Monday morning quarterback it. It's hard to right here, sitting here today. Had I selected the jury a little bit

---

[6] The idea that the inquiry should be framed in this way is not novel. In another context in which the thinking of counsel is alleged to have been corrupted — not by ignorance of the law, but by a potential conflict of interest — the United States Supreme Court has adopted the same approach, requiring proof that the potential conflict actually affected the way in which the lawyer acted at trial. See *Mickens v. Taylor*, 535 U. S. 162, 173-174 (II) (122 SC 1237, 152 LE2d 291) (2002). And although it has not said so explicitly, it appears to us that the Supreme Court has applied the same analysis in cases that, like this one, involve a lawyer's misunderstanding of the law. In *Williams,* the Court found that the lawyer had represented the defendant at trial in an objectively unreasonable way, and the Court carefully explained how a mistake of law caused the lawyer not to investigate the circumstances of the defendant's childhood, which in turn caused the lawyer to fail to present mitigating evidence to the jury. 529 U. S. at 395. This explanation suggests that it was important to the Supreme Court that the lawyer's misunderstanding of the law actually affected the way in which he tried the case.

differently with my nine strikes that I should have used, I can't really state with certainty. But would it have changed things, yes, it possibly could have.

. . .

Q. So I guess again Monday morning quarterbacking, is it possible that you were maybe allowing jurors on earlier in the panel so as not to reach the jurors later in the panel?
A. I'm really trying to be fair here. It's just very difficult for me to sit here under oath and really come down hard [on] one side or the other on that. I'm being as honest as I can. There is a likelihood had I been operating under the proper assumption of nine strikes that the composition may have been different because I may have exercised my strikes differently. I think that's a fair statement.

At most, these responses indicate that there was some possibility that the lawyer's misunderstanding of the number of peremptory challenges allowed *might* have affected the way in which he performed his duties at trial.[7] To overcome the presumption of professional reasonableness, Shields must offer something more than mere speculation. See *Williams v. State*, 284 Ga. 849, 851 (3) (672 SE2d 619) (2009). Because he fails to do so, we think he has not demonstrated deficient performance with respect to the selection of a jury.[8]

(b) We also conclude that Shields's claim of ineffective assistance with respect to the misunderstanding about peremptory strikes fails in any event because, even if the misunderstanding amounted to

---

[7] Other testimony at the hearing confirms this conclusion. In his brief, Shields suggests that, if he had known he had nine strikes, the lawyer might have struck Jurors 114 and 116 because they were "potentially hostile to the defense." But there is no proof in the record that Shields would have used a peremptory challenge to strike either if his lawyer had known that he had more challenges. Although Shields's trial lawyer testified at the hearing on his motion for new trial, the trial lawyer was never even asked about Juror 116, and there is nothing at all in the record about why this juror was accepted. And although the trial lawyer did say that Juror 114 had some of the characteristics of a juror "I probably wouldn't want to pick," and that in hindsight he probably should have struck Juror 114, he never testified that, if he had known Shields had more strikes, he would have struck Juror 114. Indeed, the trial lawyer testified that he would have saved strikes for four prospective jurors who, in fact, were never reached because the parties exercised fewer peremptory strikes. In addition, although the lawyer testified that he consulted with Shields about which prospective jurors to accept and which to strike — and that he generally defers to his clients about juror selection — Shields himself was not asked anything at all about jury selection, much less anything about Jurors 114 and 116, when he testified at the hearing. For this reason, there is nothing in the record from which we might conclude that Shields would have pressed his lawyer to pick jurors in a different manner if his lawyer had told him that he was entitled to exercise nine strikes.

[8] It is important to note that our inquiry with respect to deficient performance is not the same as the prejudice inquiry. As to deficient performance, we ask whether the defendant has shown that the lawyer should have done something different. With respect to prejudice, we ask whether, if the lawyer had done something different, there is a "reasonable probability" it would have made any difference in the result at trial.

deficient performance, Shields has not shown prejudice.[9] We begin by addressing Shields's contention that, when a lawyer makes a mistake of law regarding the number of peremptory challenges to which he is entitled, we should presume prejudice rather than require affirmative evidence of it. As the United States Supreme Court has explained, "[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial," and for this reason, such errors generally "cannot be classified according to likelihood of causing prejudice." *Strickland*, supra, 466 U. S. at 693 (III) (B). Although the United States Supreme Court has said that prejudice can be presumed in certain extraordinary circumstances, a mistake about the law governing the selection of a jury is not among them. See, e.g., *United States v. Cronic*, 466 U. S. 648, 659 (III), n. 25 (104 SC 2039, 80 LE2d 657) (1984) ("The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding."); *Cuyler v. Sullivan*, 446 U. S. 335, 349-350 (IV) (B) (100 SC 1708, 64 LE2d 333) (1980) ("[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief."). Absent such extraordinary circumstances, claims of ineffective assistance of counsel "are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland*, supra, 466 U. S. at 693 (III) (B).

Shields nevertheless says that the decision of the Supreme Court of Georgia in *Fortson v. State*, 277 Ga. 164 (587 SE2d 39) (2003), compels us to presume prejudice in this case. We do not agree. Like this case, *Fortson* involved a mistake by defense counsel in the course of striking a jury. There, the defense lawyer asked the trial court to excuse a specific prospective juror for cause, and the trial court did so, but for some reason, this prospective juror never was removed from the list from which a jury would be struck. Consequently, when the time came to strike a jury, the defense lawyer mistakenly used a peremptory challenge to strike the same prospective juror, whom the trial court already had excused for cause. Before the twelfth juror was selected, the defense lawyer exhausted all of the peremptory challenges to which the defendant was entitled. Asserting that her lawyer wasted one of her peremptory challenges on a prospective

---

[9] Because Shields has failed to demonstrate that his lawyer was ineffective, we are not required to consider the prejudice prong of *Strickland. Sellers v. State*, 294 Ga. App. 536, 537 (1) (669 SE2d 544) (2008). But because the issue of prejudice is the focus of the parties' briefs and involves consideration of some unusual circumstances, we exercise our discretion to address the question of prejudice.

juror that should have been, and actually had been, excused for cause, the defendant claimed that she was denied the effective assistance of counsel, and the Supreme Court agreed. 277 Ga. at 165-167. With respect to prejudice, the Supreme Court in *Fortson* did not say anything about the likelihood that, but for the lawyer's mistake, the result of the trial would have been different. Instead, the Supreme Court pointed to the value of peremptory challenges and then focused on the lawyer's "unnecessary waste" of such a valuable peremptory challenge. From this fact alone, the Supreme Court concluded that the defendant "suffered actual prejudice." Id. at 166. It does not follow, however, that every "waste" of a peremptory challenge is prejudicial.

Two years before it decided *Fortson*, the Supreme Court addressed another claim of ineffective assistance involving jury selection in *Head v. Carr*, 273 Ga. 613 (544 SE2d 409) (2001).[10] In *Carr*, the defense lawyer failed to ask the trial court to excuse two prospective jurors for cause — the Supreme Court assumed that, if the lawyer had asked the trial court to do so, the trial court properly would have excused both for cause — and the lawyer then used peremptory challenges to strike both prospective jurors. But unlike the lawyer in *Fortson*, the lawyer in *Carr* did not exhaust all of the peremptory challenges to which the defendant was entitled before the twelfth juror was selected. 273 Ga. at 623-624. In this context, the Supreme Court did not presume prejudice or summarily find prejudice based simply on the waste of a peremptory challenge. Id. at 624. Instead, the Supreme Court required the usual showing of actual prejudice under *Strickland* and, finding none in the record, rejected the claim of ineffective assistance of counsel. Id.

We think that the crucial distinction between *Fortson* and *Carr* is that, in the former, the defense lawyer exhausted all of his peremptory challenges before the twelfth juror was selected and, in the latter, he did not. Because Shields's lawyer did not use all of the six peremptory challenges to which he believed Shields was entitled, this case is more like *Carr* than *Fortson*.[11] Applying the principles set

---

[10] When the Supreme Court decided *Fortson*, it did not purport to overrule *Carr*. In fact, its opinion in *Fortson* does not even mention *Carr*. Because we think, for the reasons set forth in this opinion, that *Fortson* and *Carr* can be reconciled, we do not understand *Fortson* to overrule *Carr*, and we think *Carr* is still binding authority.

[11] We recognize that *Fortson* might be distinguishable from this case on other grounds as well, including that the juror on which a peremptory challenge was "wasted" in *Fortson* was a juror that should have been excused for cause, a circumstance not presented here. So, we do not mean to suggest that, if only Shields's lawyer had used all of the peremptory challenges to which he believed Shields was entitled, this case would be identical to *Fortson*. Because Shields's lawyer did not exhaust those peremptory challenges, the distinction between *Carr* and *Fortson* is enough to decide this case, and we need not decide more. We leave for another day whether *Fortson* would govern a case in which the peremptory challenges are exhausted

forth in *Carr*, we think that Shields must show actual prejudice.

Shields has failed to carry his burden of showing that he actually was prejudiced by his lawyer's misunderstanding about the number of peremptory challenges to which he was entitled. As we said in Division 1 (a), supra, the record does not establish that Shields would have exercised a peremptory challenge as to any of the 12 jurors selected if his lawyer had known that he had more challenges. Shields does not contend that any unqualified juror sat in his case. And there is no indication that the prospective jurors who were not reached before the twelfth juror was selected — but who would have been reached if the parties had exercised more peremptory challenges — were more favorably inclined toward Shields's case than the jurors who actually were selected. In these circumstances, Shields has failed to show that he was prejudiced by his trial lawyer's misunderstanding about the number of peremptory challenges to which he was entitled. See *Carr*, supra, 273 Ga. at 624.

2. Shields also contends that his trial lawyer was ineffective because he failed to object to certain testimony that reflected badly upon Shields's character. Before trial, several victims of the crimes with which Shields was charged told police that Shields was the perpetrator of these crimes. But at trial, these victims recanted their earlier statements and said Shields was not, in fact, the perpetrator. When confronted at trial with their prior inconsistent statements, these victims offered explanations for their prior identifications of Shields. Two of these explanations involved the testimony to which, Shields says, his lawyer should have objected.

One victim explained that she had erroneously identified Shields because, "as I heard, there was two people going around breaking in people's houses." Another victim said that she had identified Shields as the perpetrator only after she described the perpetrator to her boyfriend, who told her that "only two people look like that. That's Buddha and [Shields]. And those are the only two that's doing crazy stuff right about now." This victim also said that, before identifying Shields, she "actually had to call Hall County and see if he had been released, and he had been released that Thursday." When asked why she now was recanting her prior identification of Shields, she explained that "I thought it was kind of wrong for us to call Hall County Detention Center to see if that person had been released from jail and just start calling his name. . . ." Shields now says that his trial lawyer should have objected to this testimony. Because his lawyer did not object, Shields contends that he was deprived of the

---

but no peremptory challenge is directed toward a juror that should have been excused for cause.

effective assistance of counsel.

In assessing the performance of Shields's lawyer, we must remember that "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, supra, 466 U. S. at 689 (III) (A). We think that some reasonable lawyer might not have objected to this testimony for sound strategic reasons, and for this reason, Shields cannot show that his lawyer performed in an objectively unreasonable way. It is important to remember that the testimony of these victims at trial was not all bad for Shields. Indeed, the testimony that the victims had erroneously or falsely identified him as the perpetrator was quite positive. A reasonable trial lawyer might believe that the recantation of the prior identifications would be more believable if accompanied by an explanation for the prior identifications, even if that explanation reflected badly upon Shields's character. In other words, a reasonable trial lawyer might think that any explanation for a witness having erroneously identified his client as the perpetrator of the crimes charged — even if the explanation also reflected badly on the character of his client — would be more valuable than no explanation at all. Moreover, a reasonable trial lawyer might also be concerned that objecting to this testimony would tend to draw the attention of the jury away from its positive implications and focus the jury more on its negative ones. Finally, some reasonable lawyer might believe that the testimony that some other person, known as "Buddha," also was "doing crazy stuff" would be helpful in proving that someone else might have perpetrated these crimes and, for this reason, might not have objected to the testimony. Shields's trial lawyer testified that he did not object to this testimony for similar strategic reasons. We cannot say that this strategy was an unreasonable one.

For these reasons, we affirm the judgment below.

*Judgment affirmed. Barnes, P. J., and Dillard, J., concur.*

DECIDED FEBRUARY 14, 2011 — 

*Mark A. Begnaud, H. Bradford Morris, Jr.*, for appellant.
*Lee Darragh, District Attorney, Lindsay H. Burton, Assistant District Attorney*, for appellee.