**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten days**
**of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 22, 2026**

# In the Court of Appeals of Georgia

A25A2184. HOFFMAN v. SOUTHEASTERN OB/GYN CENTER, LLC et al.

PADGETT, Judge.

In this medical malpractice action, Jaime Hoffman appeals a judgment entered on a jury verdict in favor of Michael Jackson, M.D., and Southeastern OB/GYN Center, LLC, arising out of Jackson's treatment of a post-operative ileus Hoffman developed following birth of her child by cesarian section. Hoffman contends that the trial court erred in (1) refusing to remove a potential juror for cause; and (2) conducting itself "in an improper manner." For the reasons set forth below, we reverse the judgment in favor of Jackson and Southeastern OB/GYN and remand the case for a new trial.

1. Hoffman argues the trial court erred by denying her motion to dismiss for cause an unqualified juror from the panel who, as an attorney, worked for Jackson's and Southeastern OB/GYN's insurer, MagMutual, defending other MagMutual-insured medical providers in malpractice actions. We agree.

Our civil jury statute provides that litigants are entitled to "a full panel of 24 competent and impartial jurors from which to select a jury" by way of alternating peremptory strikes. OCGA § 15-12-122(b). Challenges for cause to a juror's competence or impartiality, and thus inclusion within the panel from which the jury is struck, may be made (1) for principal cause, see OCGA § 15-12-135; and (2) for favor, see OCGA § 15-12-134.

A principal cause challenge should be upheld and the juror removed from the panel where the cause has "prima facie . . . marks of suspicion," such as where the juror has an interest in the matter or where the juror "is the party's master, servant, counsellor, steward, or attorney, or of the same society or corporation with [the party]." *Bryan v. Moncrief Furnace Co.*, 168 Ga. 825, 827(1) (149 SE 193) (1929). Additionally, principal cause exists where the juror is sufficiently related to a person or entity "beneficially interested in the result of the litigation, although not a party of record." *Stokes v. McNeal*, 48 Ga. App. 816, 817(1) (173 SE 879) (1934). See OCGA § 15-12-135(a); *Temples v. Central of Ga. R. Co.*, 15 Ga. App. 115, 116 and 122 (82 SE

2

777) (1914) ("a person is not competent to serve as a juror in a cause when there exists any business relationship between himself and one of the parties which may tend to influence the verdict"; the legal inquiry is "whether the interest of the juror would be likely to be adversely or beneficially affected by any verdict he might render" (citation modified)). Where the juror has such a business relationship, he is "automatically disqualify[ied]" from serving and the trial court is without discretion to retain the juror on the panel. *Luke v. Suber*, 217 Ga. App. 84, 87(2) (456 SE2d 598) (1995), aff'd sub nom. on other grounds, *Warren v. Ballard*, 266 Ga. 408 (467 SE2d 891) (1996). See *Bryan*, 168 Ga. at 827(1) (principal causes of challenge, including where the juror is the party's servant or attorney, "cannot be overruled").

With respect to a challenge for favor, while there is "no specific test for the disqualification of a juror for favor in a civil context," where a prospective juror has a relationship with a party or an entity with an interest in the case that is either "close or subordinate," trial courts have broad discretion "to evaluate and rule upon a potential juror's impartiality, based upon the ordinary general rules of human experience, and a trial court may only be reversed upon a finding of manifest abuse of that discretion." *Kim v. Walls*, 275 Ga. 177, 178 (563 SE2d 847) (2002) (citation modified) ("*Kim*"). However, this Court has instructed trial courts "to err on the side of caution by dismissing, rather than trying to rehabilitate" biased or otherwise

3

partial jurors. *Guoth v. Hamilton*, 273 Ga. App. 435, 437(1) (615 SE2d 239) (2005) (quoting *Walls v. Kim*, 250 Ga. App. 259, 260 (549 SE2d 797) (2001) ("*Walls*")).

Before voir dire, Hoffman made a challenge for cause to a juror who disclosed in his questionnaire that he was an attorney (an associate) with a defense firm that had as one of its clients MagMutual, the medical malpractice insurance company that insured Jackson and Southeastern OB/GYN.[1] The trial court reserved ruling until after voir dire.

Once the panel was sworn, the trial court asked the full panel whether "any of you [have] any prejudice or bias in your mind either for or against either party in this case[.]"In response, the juror stated that he "defend[s] a lot of doctors . . . . [in] [m]ed[ical]-malpractice cases as an attorney." On individual voir dire, the juror shared that MagMutual was one of his clients and that his work on behalf of MagMutual and its insured medical providers comprised "probably 40 percent" of his work. When asked about potential consequences at work if he served on the jury rendering a verdict against his own client, he responded that he did "worry . . . if there [would be] some negative consequences" that could "very well" make him lean one direction. He disclosed that his law firm derived "plenty" of its business from

---

[1] All parties requested that the jury be qualified as to any relationship with MagMutual.

MagMutual. He admitted that his work for MagMutual "absolutely" presented "a large potential for bias." When asked whether he felt "pretty definite" in his assessment of his large potential bias, he responded in the affirmative, explaining that "[t]he more we've talked, [the] more definitely" he felt about the bias created by his relationship with MagMutual. It also was disclosed during voir dire that one of the "main" law firm partners for whom the juror worked was expected to be present at trial, as that partner represented a material witness who was expected to testify and against whom Jackson and Southeastern OB/GYN sought to apportion fault as a non-party.

Hoffman then renewed her motion to remove the juror from the panel for cause. Before ruling, however, the trial court permitted defense counsel to attempt to rehabilitate the juror with leading questions, eliciting his agreement that as an attorney and officer of the court, "if [he was] selected, [he] underst[oo]d the importance of a fair jury trial. . . , [and that he would] take an oath to return a verdict based on the truth without bias," and that he would follow that oath. The trial court then denied Hoffman's motion to remove the juror for cause from the panel of 24, stating — with the juror still present in the courtroom:

> He has an oath as an attorney . . . . His word's his bond. To me, to . . . find otherwise is to look him in the eye and say, you're lying to me . . . you're going to be biased. You're also asking me as the judge of this

5

court to say that [his] law firm expects their attorneys to be anything but truthful and to honor oaths if they're selected as jurors in a med[ical]-mal[practice] case.

Hoffman then used a peremptory strike to remove the juror. The record shows that Hoffman used all her peremptory strikes in selection of the jury.

Under these particular facts and circumstances, we conclude that the juror was disqualified and that the trial court erred in refusing to dismiss him from the panel for either principal cause or for favor. MagMutual's pecuniary interest in the outcome of the case is not in dispute. And this juror, an attorney, had MagMutual as a current client, representing its interests, through its insureds, in the precise type of litigation this case involves. The juror testified that 40 percent of his own work came from MagMutual cases and that his law firm derived "plenty" of its business from MagMutual, which reasonably led the juror to express the very practical concern that he harbored a "large potential for bias" due to negative consequences he might experience at work (and hence to his economic livelihood) should he be part of a jury that returned a verdict adverse to MagMutual. Both the "ordinary general rules of human experience" and the practicalities of the business relationship between insurance companies and the lawyers who defend the companies' insureds teach us that it is the insurance company that hires counsel and in most instances controls the defense, and that a lawyer's future business from the company depends on being in

the continuing good graces of the insurance company.[2] Were the juror to serve on a jury that returned a verdict adverse to MagMutual, the ordinary rules of human experience and the nature of this business relationship could very well result in MagMutual taking work away from the juror's law firm or the juror being taken off 40 percent of his case load, making his retention or promotion at the firm less likely.[3]

Thus, the legal and business relationship between the juror and MagMutual was sufficiently formal, close, and subordinate to carry with it "prima facie marks of suspicion," such that the trial court erred in refusing to dismiss the juror from the panel for cause. See *Harper v. Barge Air Conditioning, Inc.*, 313 Ga. App. 474, 475–

---

[2] For an explanation of the complexities of the relationship between counsel and insurance companies, see John D. Hadden and Jarome E. Gautreaux, Ga. Law Of Torts, Preparation for Trial § 4:14 (2025 ed.) ("[e]ven the most optimistic view of human nature requires us to realize that an attorney employed by an insurance company will slant his efforts, perhaps unconsciously, in the interests of his real client—the one who is paying his fee and from whom he hopes to receive future business—the insurance company.") (quoting *U. S. Fidelity and Guaranty Co. v. Louis A. Roser Co., Inc.*, 585 F2d 932, 938 n.5 (8th Cir. 1978)).

[3] And we note, without belaboring, the disqualifying nature of the privileged and confidential information an attorney-juror who has the insurance company as a current client in similar litigation would in all likelihood have, including insight into, and first-hand experience with, how the insurer evaluates medical malpractice cases for purposes of settlement versus going to trial, and familiarity with the quality, credibility, and manner of preparation of experts it retains for trial. No talismanic, rehabilitative leading question on voir dire can remove that information and insight, to say nothing of the duties an insurance defense attorney may owe the insurer as part of the tripartite relationship among attorney, insured, and insurer.

78(1) (722 SE2d 84) (2011) (holding trial court abused its discretion and committed reversible error in failing to strike two jurors, one of whom was a certified public accountant who had defense counsel as a client and also had defense counsel represent him in undisclosed matters, and the second of which used defense counsel as her lawyer in a real estate closing and a divorce, where both jurors expressed some belief that their relationships with counsel could affect their decision); *Brown v. Columbus Doctors Hosp., Inc.*, 277 Ga. App. 891, 892–95 (627 SE2d 805) (2006) (reversing judgment on jury verdict in favor of defendant hospital where trial court declined to strike for cause a prospective juror whose employer had a business relationship with the hospital and who testified that his economic livelihood depended in part on sales to the hospital but that he could "probably" be impartial, and plaintiff used a peremptory strike to remove the juror); *Powell v. Amin*, 256 Ga. App. 757, 758–59(1) (569 SE2d 582) (2002) (remanding case for new trial where trial court qualified pharmacist who derived a portion of his income from filling prescriptions written by defendant doctor, but who, in response to the "talismanic question" of whether that would prevent the juror from basing a verdict strictly upon the evidence, the juror answered "no"); *Daniel v. Bi-Lo, Inc.*, 178 Ga. App. 849, 851(1) (344 SE2d 797) (1986) (holding trial court's failure to excuse juror for principal cause was reversible error where party used peremptory strike on

independent insurance adjuster who had "open files" with one of the companies insuring a defendant, and noting that the adjuster's "livelihood [wa]s dependent upon the assignments received from insurance companies" such as those involved in the suit and as such, the adjuster had "a pecuniary interest, albeit an indirect interest, in the result of the case as affecting the source of [his] income[ ]"); *S. Ry. Co. v. Minor*, 196 Ga. App. 183, 184–85(3) (395 SE2d 845) (1990) (holding trial court did not abuse its discretion in striking juror for cause who issued life insurance policy for defense counsel and received two percent of the premium paid). Cf. *Luke*, 217 Ga. App. at 87(2) (finding no abuse of discretion, in medical malpractice action against obstetrician, in declining to excuse for cause jurors who were employed by or owned pharmacies, where "there was no evidence of any business arrangement between the jurors and defendant whereby the jurors could be motivated by financial concerns" (citation modified)); *Page v. Janko*, 200 Ga. App. 547, 547–48(1) (409 SE2d 48) (1991) (no error in medical malpractice action in refusing to excuse for cause an attorney-juror whose law firm had previously represented the parent corporation of the defendant organization on certain tax matters, but the attorney never personally represented the parent corporation, her firm's representation of the parent corporation was outside her field of expertise, and there was no evidence that the

attorney's firm still represented the parent corporation or would in the future).[4] See also *Carr v. Carr*, 240 Ga. 161, 162(3) (240 SE2d 50) (1977) (ordering new trial where trial court failed to disqualify juror who was an employee of corporation owned by defendant and "prospective juror's continued employment depended" on defendant).

We further disagree that defense counsel's leading questions and the juror's responses cured the disqualifying nature of the relationship between the juror and MagMutual or otherwise rehabilitated the juror's appropriate concern about his impartiality. The attorney-juror, *at best*, equivocated on whether he could be impartial. We do not agree, particularly considering "the ordinary rules of human experience," that parroting a willingness to follow an oath to be impartial is an adequate replacement for removing unqualified jurors and providing a party "a full panel of 24 competent and impartial jurors." In doing so, we echo our observations made in *Walls*:

> Many judges on this [C]ourt have served as trial judges and wholeheartedly agree with the principle that trial judges must have significant discretion in deciding whether to excuse jurors for cause. Just as wholeheartedly, we disagree with the way that the "rehabilitation"

---

[4] Because of the stark distinctions in the factual circumstances presented in *Page* and those presented here, we believe it would be imprudent to attempt to craft a per se rule of disqualification of attorney-jurors in cases where a client has an interest in the litigation.

question has become something of a talisman relied upon by trial and appellate judges to justify retaining biased jurors. Especially when the better practice is for judges simply to use their discretion to remove such partial jurors, even when the question of a particular juror's impartiality is a very close call.

*Walls*, 250 Ga. App. at 259–60.

Jackson and Southeastern OB/GYN nonetheless argue that the trial court's error was harmless because the juror ultimately did not serve on the jury, citing our Supreme Court's decision in a criminal case, *Willis v. State*, 304 Ga. 686 (820 SE2d 640) (2018), a decision they claim this Court has "implicitly recognized as applying to civil cases." We disagree. It is true that in *Willis*, the Supreme Court held that any error in qualifying a particular juror is harmless where the juror does not ultimately serve on the defendant's jury. *Willis*, 304 Ga. at 707(11)(b)-(c). However, the statutory bases and methodologies by which juries are impaneled in felony criminal cases and in civil cases are materially different, conferring different substantive rights. And furthermore, any argument that the trial court's error here was harmless disregards substantial, longstanding precedent not overruled by *Willis*.

With respect to the differing statutorily-based methodologies for impaneling juries, unlike civil cases where the parties have the right to a full panel of qualified jurors, in felony criminal cases, "parties d[o] not have the legal right for the panel to

11

be pre-qualified by the court." *Ford Motor Co. v. Conley*, 294 Ga. 530, 553(3)(b) n.15 (757 SE2d 20) (2014). Compare OCGA § 15-12-122(b) ("[i]n all civil actions . . . each party may demand a full panel of 24 *competent and impartial* jurors from which to select a jury") (emphasis supplied), with OCGA § 15-12-160.1 (in non-death penalty felony cases "the court shall have impaneled 30 jurors from which the defense and prosecution may strike jurors[,]" omitting any requirement that jurors on the panel be impartial). See also *Gossett v. State*, 203 Ga. 692, 693(4) (48 SE2d 71) (1948) (distinguishing method for jury selection in civil and misdemeanor cases from that which applies in felony criminal cases and explaining that in the latter, "it is not error . . . to refuse a motion to purge the jury as to disqualification before beginning to select a jury"); *Atlanta Coach Co. v. Cobb*, 178 Ga. 544, 555 (174 SE 131) (1934) (in felony cases, "the question of the competency and impartiality of the jurors is one to be determined *after* the process of selecting the jury has commenced.").

Thus, as the Supreme Court explained in *Atlanta Coach*, where the right (and procedure) at issue is "a full panel of twenty-four competent and impartial jurors from which to strike a jury[,]" the error in denying this right is not "cured" or rendered harmless by the fact that a disqualified juror within the panel of twenty-four ultimately did not hear the case, for that "fall[s] materially short of restoring what had been taken away by the erroneous ruling, and the plaintiff [i]s not bound to accept

12

the substitute, but could . . . maintain that the error was such as to render the further proceeding nugatory. A mere fragment of the right does not satisfy the whole." *Atlanta Coach*, 178 Ga. at 552–53. Conversely, as the Supreme Court articulated in *Atlanta Coach* and later returned to in *Willis*, where a disqualified juror is among the prospective jurors in a felony criminal case, the trial court overrules a challenge for cause, and the defendant utilizes a peremptory strike to remove the juror, "there could be no presumption of injury from such a ruling, because no legal right of the defendant had been infringed." *Atlanta Coach*, 178 Ga. at 556. See *Willis*, 304 Ga. at 704(11)(a) (OCGA § 15-12-160.1 confers the right to "qualified jurors" who will "try the case" and does not require that potential jurors be without defects in their qualifications; thus, any such defects are not presumptively harmful).

We do not read *Willis*, which interpreted the felony criminal jury statute, to alter or overrule longstanding precedent correctly recognizing that parties in civil cases are entitled to a full panel of 24 competent and impartial jurors and that an erroneous failure to dismiss a juror for cause is presumptively harmful, regardless of whether the objectionable juror heard the case, where the complaining party used all her peremptory strikes. See *Melson v. Dickson*, 63 Ga. 682, 686 (1879) (ruling that inclusion of jurors within the panel who should have been removed for cause, which forced party to use peremptory strikes on those jurors, was harmful error); *Bryan*,

13

168 Ga. at 831(1) (denial of the "vital and important right" of a panel of 24 competent and impartial jurors "entitles the plaintiff to a new trial, without going further"); *Atlanta Coach*, 178 Ga. at 551 (trial court's failure to qualify prospective jurors as to defendant's insurance carrier was presumptively harmful, notwithstanding that no disqualified juror heard the case); *Conley*, 294 Ga. at 550(3)(b) (recounting the "longstanding Georgia rule" that where a civil jury is not properly qualified as to interest jurors may have in an insurance company having a financial interest in the outcome of the suit, "prejudice . . . will be presumed, and in the absence of proper rebuttal, a new trial must be ordered");[5] *Harper*, 313 Ga. App. at 479(1) (reversing judgment on jury verdict where trial court failed to remove two jurors for cause and plaintiff used peremptory strikes on those jurors). See also *Jones v. Cloud*, 119 Ga. App. 697, 706–08(5) (168 SE2d 598) (1969) (failure in civil case to remove jurors for cause and replenish the panel with qualified jurors was "erroneous and hurtful"; "[p]arties should not be required to use their strikes in an effort to remove disqualified jurors").

---

[5] Indeed, the Supreme Court in *Conley* (decided only four years before *Willis*) reaffirmed the presumptive harm rule set out in *Atlanta Coach* and declined to adopt felony criminal cases' requirement of actual harm. *Conley*, 294 Ga. at 553 n.15.

14

We thus reject Jackson's and Southeastern OB/GYN's suggestion that the Court in *Willis*, in the course of correcting case law that had misread and misapplied the felony criminal jury statute, overruled nearly 150 years of precedent applying the materially different civil jury statute, without the faintest hint of announcing as much.[6] And we likewise reject the notion they advance that post-*Willis* dicta in two of this Court's opinions could have similarly dismantled our longstanding rule of presumptive harm where a trial court has denied a civil litigant her statutory right to a full panel of 24 competent and impartial jurors from which to strike a jury.[7]

---

[6] In the body of its opinion, the Court in *Willis* overruled *Harris v. State*, 255 Ga. 464, 465(2) (339 SE2d 712) (1986), and *Fortson v. State*, 277 Ga. 164, 166(2) (587 SE2d 39) (2003), based on those decisions erroneously interpreting OCGA § 15-12-160.1 and its predecessor to require that the panel consist of "qualified" jurors. *Willis*, 304 Ga. at 704–07(11)(a). In a footnote, the Court in *Willis* went on to explicitly overrule two additional cases wherein it had relied on *Harris* and *Fortson* to reverse convictions, and it also disapproved of an additional, named and cited, 50 cases from the Supreme Court and this Court "to the extent that they relied on or referred to the holdings in *Harris* and *Fortson*." *Willis*, 304 Ga. at 706(11)(a) n.3. Unsurprisingly, the Court did not overrule *Melson*, *Bryan*, *Atlanta Coach*, and their progeny; nor does that line of cases rely on either *Harris* or *Fortson*.

[7] See *Thomas v. Meziere*, 356 Ga. App. 738 (847 SE2d 394) (2020). This Court in *Meziere* held that the trial court did not abuse its discretion in declining to remove for cause two prospective jurors who were married and otherwise had no indicia of bias, prejudice, or relation to any party or entity with an interest in the outcome of the case. *Meziere*, 356 Ga. App. at 739–40(1). Our reference to *Willis* in a footnote was mere dicta, id. at 739(1) n.3., and in the very next footnote, we cited our decision in *Harper*, where we held the trial court's abuse of discretion in failing to remove two jurors for cause, which resulted in the challenging party using her peremptory strikes

15

We conclude that unless and until the legislature revises OCGA § 15-12-122(b) or our Supreme Court overrules its own cases and those of this Court holding that a trial court's failure, in a civil case, to remove a disqualified juror from the panel constitutes reversible error, we are constrained to find that the trial court's error here was harmful. Accordingly, we reverse the judgment in favor of Jackson and Southeastern OB/GYN and remand the case for a new trial.

2. Based upon our holding in Division 1, supra, we need not address Hoffman's remaining enumeration of error.

*Judgment reversed and case remanded for new trial. Doyle, P. J., and Markle, J., concur.*

---

on those jurors and not other, actually qualified jurors, was reversible error. Id. at 740(1) n.4 (citing *Harper*, 313 Ga. App. at 478(1)).

Our reference to *Willis* in *Golden Isles Cruise Lines, Inc. v. Lowie*, 350 Ga. App. 1 (827 SE2d 703) (2019), again came by way of footnote and is likewise dicta. There, the appellant assigned error to the trial court requiring it to use all six of its peremptory strikes, rather than permitting the appellant to use only three strikes, and this Court, pretermitting whether requiring a party to use all six was erroneous, held that the appellant had not demonstrated harm. Id. at 11(3). The question of whether a civil litigant is presumptively harmed where the trial court erroneously includes an unqualified juror within the panel and that litigant uses a peremptory strike on that juror, and the ongoing viability of *Atlanta Coach*, were not at issue in *Golden Isles*.