A07A0483. MATTHEWS v. THE STATE.
(648 SE2d 160)

MIKELL, Judge.

Following a jury trial, Mark Weyman Matthews appeals his convictions of burglary and of possession of tools for the commission of a crime, contending that the trial court erred in denying his motion for a continuance to enable him to further prepare an alibi defense and in failing to charge the jury on the defense of alibi. We disagree and affirm.

> The standard of review for sufficiency of the evidence in a criminal case is set out in *Jackson v. Virginia.*[1] The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In addition, appellant no longer enjoys a presumption of innocence. An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses.[2]

So viewed, the evidence shows that on February 5, 2004, 14-year-old Sterling Maynard returned home from school and discovered that his

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[2] (Citation, punctuation and footnotes omitted.) *Spradlin v. State,* 279 Ga. App. 638 (631 SE2d 828) (2006).

family's home in Whitfield County had been broken into sometime during the day, between 7:45 a.m. and 4:00 p.m. Sterling's bedroom window was broken, the home was ransacked, the power meter was removed from its base, the telephone line was severed, and the following items were missing: a red Ibanez GAX-30 guitar; an Atlanta Thrashers toboggan; $115 in U. S. currency from Sterling's bedroom; $75-85 in U. S. currency from Sterling's brother's bedroom; a "spitfire" wallet with an identification card bearing Sterling's name, address and phone number; jewelry, including bracelets and necklaces belonging to Sterling's mother; and the contents of a coin collection. Sterling's father explained that the home was protected by a security system but that the system was disabled when the telephone line was cut. He further testified that when he entered the home with police, he noticed that an analog clock on the kitchen range had stopped at 10:45.

Steve Simmons, Matthews's former employer, testified that Matthews worked for him from December 12, 2003 to January 19, 2004; that he suspected Matthews stole from his company; and that he inspected Matthews's vehicle, with his permission, and discovered documents explaining how to circumvent a security alarm and unlock a safe, and listing several websites regarding the same. Gwendolyn Woody testified that Matthews lived with her from November 2003 until January 15, 2004; that he performed maintenance work for her in exchange for room and board; and that she reported to police that Matthews had taken property from her.

On February 6, 2004, Detective Jason Pilcher and Investigator Michael Booth of the Whitfield County Sheriff's Office, executed a search warrant for Matthews at the Downtown Motor Inn of Dalton based on Woody's complaint. Matthews was arrested, read his rights and consented to a search of his vehicle and hotel room. Officers recovered various tools, including bolt cutters, screwdrivers, and pliers, a pair of cloth gloves, and the following items, which the Maynards identified as theirs: a collection of antique coins; $95 in U. S. currency; a "spitfire" wallet with Sterling's identification card; a ball of jewelry; and a red Ibanez guitar, which had been lying under Matthews's bed.

Matthews testified at trial and explained that he was a handyman and carpenter and that he used the tools found in his possession for those purposes. Matthews denied the burglary, and testified that he was in Chattanooga donating plasma, beginning at approximately 8:00 a.m. on February 5, 2004. Matthews explained that on the evening of February 5, 2004, he purchased a guitar, some balled up jewelry and "some old money" for $75 from two prostitutes who came to his hotel room.

1. In his first enumeration, Matthews contends that the trial court erred in denying his motion for a continuance to enable him to further prepare an alibi defense. At the call of his trial, on September 17, 2004, Matthews moved for a second continuance on the same ground,[3] explaining that he did not have sufficient time to drive from Chattanooga to Dalton in time to conduct the burglary at approximately 10:45 a.m., when the Maynard's power was interrupted. Defense counsel explained that he had just received a fax from the plasma center documenting that Matthews arrived at 8:28 a.m. on February 5, 2004, and that counsel needed more time to lay a proper foundation for the document and to subpoena a witness to establish the duration of plasma donation and to corroborate Matthews's testimony. The trial court denied the motion, noting that the alibi evidence accounted only for Matthews's whereabouts during the morning hours of February 5, 2004, that Matthews had two months from the first continuance to establish his alibi, and that Matthews could not even identify an alibi witness.

OCGA § 17-8-25 provides that,

> [i]n all applications for continuances upon the ground of the absence of a witness, it shall be shown to the court that the witness is absent; that he has been subpoenaed; that he does not reside more than 100 miles from the place of trial by the nearest practical route; that his testimony is material; that the witness is not absent by the permission, directly or indirectly, of the applicant; that the applicant expects he will be able to procure the testimony of the witness at the next term of the court; that the application is not made for the purpose of delay but to enable the applicant to procure the testimony of the absent witness; and the application must state the facts expected to be proved by the absent witness.

"Each of the requirements set forth in OCGA § 17-8-25 must be met before an appellate court may review a trial judge's discretion in denying a motion for continuance based upon the absence of a

---

[3] The trial court explained that defense counsel had been appointed on February 11, 2004; that the case originally was called for trial on July 19, 2004; that a jury was selected; that defense counsel moved for a continuance because Matthews had just informed him that he was in Chattanooga donating plasma at the time of the burglary; and that the court granted the continuance to allow counsel to investigate Matthews' "[eleventh] hour revelation" that he was 30 minutes away in Chattanooga two to three hours before the crime was alleged to have occurred.

witness."[4] Given that appellant had seven months since his incarceration to establish an alibi defense, that the trial court previously granted a continuance for the very same reason, and that Matthews had two months from that continuance to identify an alibi witness, we cannot say that the trial court abused its discretion in denying Matthews's motion for a continuance.

2. Matthews contends that the trial court erred in failing to charge the jury on the defense of alibi. We do not agree.

Matthews did not request an alibi charge, however, and it is ordinarily not error for the court to fail to charge on alibi absent a request.[5] This is true even if alibi is "the sole defense."[6] The rationale underlying this rule is that alibi is not an affirmative defense.[7]

> [S]ince the true effect of an alibi defense is to traverse the state's proof that the defendant committed the crime, the charge that the burden is on the state to prove that the defendant committed the crime beyond a reasonable doubt itself necessarily covers the question of whether the evidence of alibi was sufficient to create a reasonable doubt.[8]

Here, the court fully charged the jury on the presumption of innocence and the burden of proof beyond a reasonable doubt. Moreover, Matthews's alibi testimony did not establish the impossibility of his presence at the scene of the burglary at the time of its commission. "It is well settled that where the evidence in support of the defense of alibi does not show the impossibility of the defendant's presence at the scene of the crime at the time of its commission, the failure of the court to charge the law of alibi is not error."[9] Matthews testified that he arrived at the plasma center in Chattanooga at 8:30 a.m. on February 5, 2004; that it takes between one to one and a half hours to donate plasma; and that it took approximately 45 minutes to drive from the Downtown Motor Inn to Chattanooga. Matthews did not testify about his whereabouts for the remainder of the day. Sterling and his father testified that their home was empty from 7:45 a.m. to 4:00 p.m. Accordingly, the burglary could have occurred anytime between 7:45 a.m. and 4:00 p.m. on February 5, 2004. Under these

---

[4] (Citation and punctuation omitted.) *Curry v. State*, 177 Ga. App. 609 (1) (340 SE2d 250) (1986).

[5] See *Rivers v. State*, 250 Ga. 288, 300 (8) (298 SE2d 10) (1982).

[6] (Punctuation and footnote omitted.) *Seese v. State*, 235 Ga. App. 181, 183 (1) (509 SE2d 94) (1998).

[7] See *Rivers*, supra at 299 (8).

[8] (Citations omitted.) Id. at 300 (8).

[9] (Citation and punctuation omitted.) *Hulett v. State*, 262 Ga. 194, 195 (2) (415 SE2d 642) (1992).

circumstances, the trial court did not err in failing to charge the jury on alibi absent a request from the defendant.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JUNE 15, 2007.

*Mary Erickson*, for appellant.

*Kermit N. McManus, District Attorney, Mark P. Higgins, Jr., Assistant District Attorney*, for appellee.