### A10A0706. SHINDORF v. THE STATE.
(694 SE2d 177)

MIKELL, Judge.

James Leslie Shindorf appeals from the order denying his motion for new trial following his conviction of burglary. Finding no error, we affirm.

1. Shindorf challenges the sufficiency of the evidence to support his conviction.

> The standard of review for sufficiency of the evidence in a criminal case is set out in *Jackson v. Virginia*.[1] The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In addition, appellant no longer enjoys a presumption of innocence. An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses.[2]

Viewed in its proper light, the evidence shows that Harold Bearden owns a home on ten acres in Bartow County. After Bearden and his wife, Isabel, moved out, unknown persons began breaking into the home and stealing items stored there as well as on the land. In December 2006, Bearden hired a former law enforcement officer, Ralph Bruce, to conduct a stake-out to attempt to catch the perpetrators. On December 15, Bruce and a sheriff's office investigator, Keith Milner, arrived at midnight and secured the home by making sure the doors and windows were closed and that no one was inside. Bruce remained in his vehicle to conduct surveillance, while Milner left. At 5:00 a.m., Bruce left briefly to get food. Upon reentering the property, Bruce saw two men, later identified as Shindorf and his co-indictee, Shannon Lovingood,[3] walking from the house toward a car that was parked facing out of the driveway. Bruce, who was in his vehicle, saw the men get in the car — Lovingood was driving — and

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[2] (Footnote omitted.) *Matthews v. State*, 285 Ga. App. 859 (648 SE2d 160) (2007).

[3] Shindorf and Lovingood were jointly indicted but tried separately.

554

speed down the driveway toward him. Bruce illuminated his bright lights, stepped out, drew his weapon, and ordered the men to halt. They complied, and Bruce called the police. According to Bruce, Shindorf and Lovingood claimed that they had come onto the property looking for water because their car was running hot. Bruce testified that the car was not hot to the touch; in fact, he had placed Shindorf and Lovingood down on the hood while securing them.

Sheriff's deputies Calvin Edwards and Brandon Pruitt responded to the scene. Edwards searched Shindorf and found in his pocket a checkbook belonging to persons named McDonald and Fletcher and a single check purportedly bearing Mrs. Bearden's signature. Bearden testified that his wife's signature had been forged on the check and that the other checkbook did not come from his property. Bearden also testified that around the time of the break-in, he discovered that some of his checks had been stolen from the house because they began appearing at various banks with his forged signature. Bearden did not know when the checks were taken, but he testified that the sheriff's department had already notified him by December 15 that his checkbook had been taken. Pruitt testified that a forgery investigation was ongoing at that time.

Pruitt searched the suspects' car at the scene and found burglary tools, including a reciprocating saw and wire cutters, in the dash and on the floorboard of the passenger side, where Shindorf had been sitting. Bruce testified that he checked the residence after Shindorf and Lovingood were taken into custody and found the front door wide open as well as several baskets of items turned over and scattered. Edwards testified that the house had been ransacked; it was in total disarray, and all the doors were open.

The defense presented evidence that two of Bearden's checks were passed by Paula Cox before December 15. Cox gave a statement to Officer Jonathan Rodgers, who investigated the fraudulent checks drawn on the Beardens' account. In the statement, Cox indicated that Shindorf and Lovingood had given her the checks, which were already signed, and that she cashed the checks at Wal-Mart. At trial, Cox testified that the checks had come from Lovingood.

"A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another."[4] Here, Shindorf argues that the evidence was consistent with his innocence of burglary because he could have received the forged check prior to the night in question, given the evidence that checks had been stolen

---

[4] OCGA § 16-7-1 (a).

from Bearden's house before December 15. An appellate court does not weigh the evidence, however.

> Conflicts in the testimony of the witnesses, including the [s]tate's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, the jury's verdict will be upheld.[5]

Here, the evidence, both direct and circumstantial, is more than sufficient to sustain Shindorf's conviction of burglary.[6]

2. Shindorf argues that his conviction must be set aside because it is based on a different theory than that which was alleged in the indictment. To the extent that Shindorf argues that a fatal variance exists between the allegata and the probata, he has waived the issue by failing to raise it in the trial court.

> The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.[7]

The indictment in the instant case accused Shindorf of committing burglary on or about December 15, 2006. The last check on Bearden's account that was passed by Cox was dated December 11. There was evidence, although impeached, presented during Cox's rebuttal testimony that she received checks from Shindorf before she passed them. Based on this evidence, the prosecutor asserted that Shindorf could have entered Bearden's home before December 15 and then returned on that date, and the state asked the court to charge the jury that, where the date alleged in the indictment is not a material element of the offense, the state may prove the offense as of any date within the statute of limitation. The trial court granted the state's request. Although Shindorf objected to the charge, he did not ask the trial court for any additional time or any other relief based on the state's assertion of the theory at issue.

Shindorf now argues that the state's "abrupt change" in its

---

[5] (Footnote omitted.) *Smallwood v. State*, 296 Ga. App. 16, 18 (1) (673 SE2d 537) (2009).

[6] *Jackson v. Virginia*, supra.

[7] (Citation omitted.) *DePalma v. State*, 225 Ga. 465, 469-470 (3) (169 SE2d 801) (1969).

theory of guilt violated his due process rights and rendered his defense worthless because he had been precluded from inquiring about events prior to December 15. But Shindorf does not argue on appeal that the trial court erred in charging the jury that the date alleged in the indictment was not a material element of the offense. Nor did he assert an alibi defense, which would have made the date material.[8] If Shindorf was surprised by any alleged variance between the allegata and the probata, it was incumbent upon him to seek a continuance or some other relief in the trial court.[9] As he failed to do so, we cannot address the issue on appeal.

> Issues presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken. . . . [O]ne may not abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled on by the trial court.[10]

3. Shindorf contends that the trial court erred in failing to instruct the jury on criminal trespass as a lesser included offense of burglary. "A trial judge *never* errs in failing to instruct the jury on a lesser-included offense where there is no written request to so charge."[11] Shindorf did not request a charge on criminal trespass, either orally or in writing. He argues that a request was unnecessary, however, because criminal trespass was his sole "defense," and a trial court must charge sua sponte on a defendant's sole defense if it is supported by some evidence. Shindorf cites *Tarvestad v. State*[12] in support of his argument. "[Shindorf's] reliance is misplaced because the defendant in *Tarvestad* made an oral request for a charge on his sole affirmative defense, justification, and that defense was fairly raised by the evidence."[13] Here, however, Shindorf made no oral

---

[8] *Caldwell v. State*, 139 Ga. App. 279, 287 (2) (228 SE2d 219) (1976) (physical precedent only).

[9] See, e.g., *Hutton v. State*, 192 Ga. App. 239, 241 (4) (384 SE2d 446) (1989); *Frymyer v. State*, 179 Ga. App. 391, 392-393 (2) (346 SE2d 573) (1986); *Caldwell*, supra at 290 (2) ("the instant variance should have been complained of by an appropriate motion for time to prepare a defense to meet the new date") (citations omitted).

[10] (Footnote omitted.) *Scott v. State*, 254 Ga. App. 728, 729 (1) (a) (563 SE2d 554) (2002).

[11] (Citation and punctuation omitted; emphasis supplied.) *Gadson v. State*, 264 Ga. App. 280, 281 (2) (444 SE2d 305) (1994). Accord *Herbert v. State*, 298 Ga. App. 826, 828 (1) (681 SE2d 245) (2009) (trial court did not err in failing to charge jury on criminal trespass as lesser included offense of burglary in absence of request). Compare *Waldrop v. State*, 300 Ga. App. 281, 284-285 (3) (684 SE2d 417) (2009) (convictions reversed where defendants filed a written request to charge lesser included offense of criminal trespass).

[12] 261 Ga. 605 (409 SE2d 513) (1991).

[13] *Grant v. State*, 257 Ga. App. 678, 681 (1) (c) (572 SE2d 38) (2002), citing *Tarvestad*, supra at 606.

request for a charge on criminal trespass, and the trial court did not err in failing to give one sua sponte.

4. Finally, Shindorf argues that the trial court erred in sentencing him as a recidivist pursuant to OCGA § 17-10-7 (c) because the state did not timely file its notice of intent to use his prior convictions in aggravation of punishment. We disagree.

The record reflects that the state served and filed its notice of intent on March 20, 2008, and trial commenced on March 24. Shindorf contends that, because he had opted into reciprocal discovery, the state was required to serve him with the notice of intent ten days before trial. According to OCGA § 17-16-4 (a) (5), however, the trial court may permit the state to provide notice to the defendant at any time prior to trial. Specifically, the Code section reads:

> The prosecuting attorney shall, no later than ten days prior to trial, or at such time as the court orders but in no event later than the beginning of the trial, provide the defendant with notice of any evidence in aggravation of punishment that the state intends to introduce in sentencing.

In the case at bar, the trial court found as a fact that notice was given on Thursday before trial started. As the state provided the notice four days before trial, it was timely.[14]

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED APRIL 7, 2010.

*Jimmonique R. S. Rodgers*, for appellant.
*T. Joseph Campbell, District Attorney, Shelly D. Faulk, Assistant District Attorney*, for appellee.

---

[14] See *McClam v. State*, 291 Ga. App. 697, 698 (1) (662 SE2d 790) (2008).