**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 15, 2013**

# In the Court of Appeals of Georgia

A13A0691. BARMORE v. THE STATE.

MCMILLIAN, Judge.

Following a jury trial, Ricky Lee Barmore was convicted of three counts of child molestation and three counts of sexual battery. He filed a motion for new trial, which the trial court denied. On appeal, Barmore contends his trial counsel was ineffective for failing to move to strike a juror for cause, failing to use a peremptory strike on the same juror, and failing to object to a witness's improper bolstering testimony. Finding no error, we affirm.

Viewing the facts in the light most favorable to the verdict,[1] on the Friday afternoon of August 20, 2010, Barmore picked up thirteen-year-old K.R., the victim, from her home and then went to pick up his thirteen-year-old and eight-year-old

_____

[1] *Marriott v. State*, 320 Ga. App. 58 (739 SE2d 68) (2013).

daughters at the home of his ex-wife, Beverly Pair. K.R. and the thirteen-year-old daughter were good friends. The three girls were to spend the weekend with Barmore and attend a birthday pool party on Saturday. Before the girls left with Barmore, Pair warned her thirteen-year-old daughter to watch out for Barmore around K.R. and not to leave K.R. alone with Barmore. On the way to Barmore's residence, which is a camper behind his mother's home, Barmore and the three girls ate dinner at a Mexican restaurant and then went to the grocery store, where Barmore purchased some alcoholic beverages.

At some point later in the evening while in Barmore's camper, Barmore gave his thirteen-year-old daughter and K.R. Mike's Hard Lemonade, beer and vodka while playing the drinking game "Quarters" with them. The girls eventually went to bed with the thirteen-year-old daughter and K.R. sharing a bed in the back bedroom and the other girl sleeping on the couch. While the two girls were sleeping in the bed, Barmore came into the room, lay next to K.R. and began to touch her breasts. He then moved his hand down toward her groin area. K.R., then pretending to be asleep, rolled over on her stomach away from Barmore. Barmore attempted to enter her pants from the rear trying to again get to the groin area. K.R. then jerked away, and

Barmore stopped and left the room. The other girl did not wake up during the incident.

K.R. told the thirteen-year-old daughter what had happened the following morning via text message so that her younger sister would not hear, and both girls began crying. The thirteen-year-old daughter later called Pair who stopped what she was doing and came to the pool party to get the girls. The girls got into Pair's vehicle without telling Barmore and left. Pair did not take K.R. directly home, but instead, took K.R. to Pair's home where she questioned her about the incident, and K.R. stayed the night at Pair's home. Pair took K. R. back to her home the following day.

Upon learning of what happened, K. R.'s mother contacted the Whitfield County Sheriff's Office, which began an investigation. As protocol, the Sheriff's Office arranged for Katie Walker, forensic interviewer for The Friends of the GreenHouse, Inc. (the "GreenHouse") to interview K.R. about the incident.

The GreenHouse is a Whitfield County child advocacy corporation with Charles Eicholtz as the president of the board of directors. Charles Eicholtz also served as the foreperson on the jury that convicted Barmore. According to Brenda Hoffmeyer, Secretary of the GreenHouse board, the GreenHouse was formed under a prior Whitfield County district attorney and is a government agency under the

3

Victim Assistance Program of the district attorney's office.[2] The board is the financial and fund-raising arm of the GreenHouse while the district attorney's office operates the center including all administrative functions, staff, policies and procedures. All GreenHouse employees are employees of the district attorney's office. Generally, board meetings are informational where discussions involve managing the center, managing staff, and no active voting takes place. Board members, including Eicholtz, are not compensated in any way and board members are not involved in the investigations conducted by the GreenHouse.

During voir dire, Eicholtz acknowledged being the president of the board for GreenHouse. Defense counsel inquired about his position, to which Eicholtz replied, "oversight of operations of The GreenHouse." According to Eicholtz, oversight included hiring and interviewing standards, but he did not say the board actually did the hiring or interviewing. Eicholtz also acknowledged knowing Stephen Spencer, the prosecutor in the case, Katie Walker who interviewed K.R. at the GreenHouse, and

---

[2] Trial counsel admitted in his testimony at the motion for new trial hearing that at the time of voir dire, he did not know the GreenHouse was formed by and under the district attorney's office, believing the GreenHouse to be a private organization that worked closely with the district attorney's office.

Glenn Swinney, an investigator in the case. However, Eicholtz said even though he worked with law enforcement often, he could be an impartial juror.

At trial, J. S., Pair's older, biological daughter and Barmore's step-daughter, testified to four prior occasions in which Barmore molested her as a child while she lived with Pair and Barmore during their marriage. J. S. only told her mother about one of the incidents, which Pair cites as the reason for warning her thirteen-year-old daughter about leaving K. R. alone with Barmore. Neither J. S. nor Pair ever called the police about the incidents related to J. S.

Barmore asserts that the trial court erred in denying his motion for new trial on the ground that his counsel was ineffective. In order to show that counsel provided ineffective assistance, it must be shown that his performance was deficient and that the deficient performance prejudiced Barmore. *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). "A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (Citation and punctuation omitted.) *Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011). Barmore must overcome a strong presumption that counsel's action fell within the wide range

of professional assistance. *Shields v. State*, 307 Ga. App. 830, 831 (1) (a) (706 SE2d 187) (2011).

1. We will first address Barmore's contention that his trial counsel was ineffective when he did not move to strike juror Charles Eicholtz for cause. Under OCGA § 15-12-164 (d), "[t]he court shall also excuse for cause any juror who from the totality of the juror's answers on voir dire is determined by the court to be substantially impaired in the juror's ability to be fair and impartial. The juror's own representation that the juror would be fair and impartial is to be considered by the court but is not determinative." A juror can be disqualified for cause only if it can be shown that an opinion held by the potential juror is fixed and definite such that the potential juror would be unable to set aside the opinion and decide the case on the evidence or the court's charge upon the evidence. *Rocha v. State*, 248 Ga. App. 53, 53 (1) (545 SE2d 173) (2001). In the context of an ineffective assistance of counsel claim, the question is whether "[c]onsidered from the perspective of voir dire and not from hindsight," counsel's failure to move to strike the juror for cause was objectively unreasonable. *Phillips v. State*, 277 Ga. 161, 162 (587 SE2d 45) (2003).

Barmore argues that because Eicholtz was the president of the board of the Greenhouse, which interviewed the victim in this case, Eicholtz should be considered

6

in essence an employee of the district attorney's office and stricken for cause. See *Beam v. State,* 260 Ga. 784, 785 (2) (400 SE2d 327) (1991) (holding that it was error to fail to strike a juror for cause who was a full-time employee of the district attorney's office). However, *Beam* has been limited to full-time employees of the district attorney's office, and the Supreme Court and this Court have refused to extend *Beam* to other contexts even when the juror knew members of the district attorney's office or had a professional relationship with them. See *Shiver v. State*, 276 Ga. 624, 625 (2) (581 SE2d 254) (2003) (not error to refuse to strike for cause father of assistant district attorney in the same prosecutor's office); *Berry v. State*, 302 Ga. App. 31, 32-33 (1) (690 SE2d 428) (2010) (friend of district attorney who also did contract work for the district attorney's office was not disqualified); *Marryott v. State* 263 Ga. App. 65, 68 (3) (587 SE2d 217) (2003) (court refused to strike for cause volunteer of district attorney's office Victim Assistant Program noting juror was not compensated for work).

Unlike the juror in *Beam*, Eicholtz was president of the board of GreenHouse, a separate, duly formed corporation, operating under the district attorney's Victim Assistance Program. Neither GreenHouse nor the district attorney's office compensates Eicholtz for his work as president of the board of GreenHouse, and

7

Barmore produced no evidence either during the trial or at the motion for new trial hearing that Eicholtz had any day-to-day operational role within GreenHouse or worked with victims in any way. Accordingly, we find that Eicholtz was not subject to be stricken for cause solely because of his position at GreenHouse. See *Berry*, 302 Ga. App. at 32-33 (1); *Marryott,* 263 Ga. App. at 68 (3).

Moreover, while Eicholtz knew several individuals involved with the case professionally, his acquaintance with members of the district attorney's office and law enforcement is not sufficient to strike him for cause. See *Shiver*, 276 Ga. at 625 (2). And Eicholtz unequivocally stated during voir dire that he could be impartial. Accordingly, Barmore has failed to show that Eicholtz had a fixed and definite opinion or was not able to decide the case on the evidence and should have been stricken for cause. Because Barmore has not shown that an effort to strike Eicholtz would have been successful, trial counsel was not deficient for failing to move to strike him for cause. See *Phillips v. State*, 277 Ga. 161, 162 (587 SE2d 45) (2003); *Ware v. State*, __ Ga. App. __ (3) (742 SE2d 156) (2013).

2. Barmore further contends that trial counsel was ineffective for not using one of nine peremptory strikes against Eicholtz. Barmore claims that had his counsel properly counted the number of peremptory strikes he had used, he would have saved

8

one for Eicholtz instead of mistakenly using all nine on other potential jurors. In a non-death penalty case, each side may use nine peremptory strikes of jurors. OCGA § 15-12-165. To show counsel was deficient in the use of peremptory challenges, Barmore must overcome a strong presumption that counsel conducted jury selection in a manner "within the wide range of professional assistance." See *Shields*, 307 Ga. App. at 831 (1) (a). "Which, and how many, prospective jurors to strike is a quintessential strategic decision." Id. at 832 (1) (a); see also *Vega v. State*, 285 Ga. App. 405, 407 (2) (a) (646 SE2d 501) (2007) ("Trial counsel's decisions about which jurors to strike and which to keep are tactical.").

Applying these standards, we find that Barmore has not overcome the strong presumption that his counsel's decisions on what prospective jurors to strike and which to keep were anything other than strategic. The trial transcript indicates that when the trial judge suggested to Barmore's counsel that he had used all nine of his strikes, he replied that he had only used eight. But as the trial court indicated to counsel, and as the record makes clear, the defense actually had used all nine of its strikes at that time, and thus had no strike left for Eicholtz. Nevertheless, Barmore's counsel admitted at the hearing on the motion for new trial that he had valid tactical and strategic reasons for the nine strikes he made. And although counsel indicated

9

that he had intended to strike Eicholtz, but miscounted his strikes, the test for ineffective assistance of counsel "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." (Citation omitted.) *Brown v. State*, 288 Ga. 902, 909 (5) (708 SE2d 294) (2011). "Thus, a tactical decision will not form the basis for an ineffective assistance of counsel claim unless it was so patently unreasonable that no competent attorney would have chosen it. *McKenzie v. State,* 284 Ga. 342, 347 (667 SE2d 43) (2008)." (Punctuation omitted.) Id. We cannot say under the circumstances of this case that a reasonable trial counsel who properly counted his strikes would have struck the jury in a different way. See *Shields v. State*, 307 Ga. App. at 832 (finding that trial counsel's decision to exercise only five peremptory challenges in mistaken belief that he had no additional challenges did not amount to deficient performance, because "it does not follow that this misunderstanding necessarily affected his strategic decision to strike only five prospective jurors.") Accordingly, the trial court properly denied Barmore's motion for new trial on this ground.

3. Barmore also contends that trial counsel provided ineffective assistance by failing to object when witness Beverly Pair improperly bolstered the testimony of

K.R. and J. S., the similar transaction witness.[3] In the first instance, Pair was describing a conversation with Barmore about K. R.'s allegations:

> PAIR: I just said, I know what you done, I know everything you done.
>
> THE STATE: You said that to him?
>
> PAIR: Yeah. I know everything you done. I didn't tell him what I knew. And I said, They wouldn't lie to me, they wouldn't lie to me. And he told me that they were crazy, he hadn't done anything, that [the younger daughter] must have gotten off of the couch asleep with him and got in the bed and touched [K.R.]

Later, on cross-examination, Pair testified to a conversation she had with J. S. about a prior alleged instance of molestation:

> DEFENSE COUNSEL: You never told [J. S.] that Ricky is sorry and blamed [it] on Jäger[meister]?
>
> PAIR: No. He told her that. She said all she wanted was him to admit the truth, and I told her I knew she was telling the truth, . . . But she said, Mom, I want him to admit it in front of me and – when he admits it to

---

[3] In the motion for new trial, Barmore also pointed to other testimony in which trial counsel had objected to the bolstering as speculative, but failed to seek curative instructions after the objection was sustained. Barmore has not argued this error on appeal, so it is considered abandoned. See *Wynn v. State*, __ Ga. App. ___, (A13A0176, decided May 30, 2013); Court of Appeals Rule 25(c)(2).

you, I want to be there and I want him to do it in front of me and I want him to apologize and admit it, and he did.

"It is well established that credibility of a witness is a matter for the jury, and a witness's credibility may not be bolstered by the opinion of another witness as to whether the witness is telling the truth." (Citation omitted.) *Strickland v. State*, 311 Ga. App. 400, 403 (715 SE2d 798) (2011). Although Pair improperly bolstered the testimony of K.R. and witness J.S., Barmore must do more than show that counsel failed to object. "To show that the performance of his lawyer was deficient, [Barmore] must prove that his lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in light of prevailing professional norms." (Citations omitted.) *Young v. State*, 292 Ga. 443, 445 (3) (738 SE2d 575) (2013); see also *Holmes v. State*, __ Ga. ___, (Case No. S13A0369, decided June 17, 2003).

Here, the defense strategy was that Pair had orchestrated the claims against Barmore as retribution for his conduct in their tumultuous relationship and that Pair was therefore not credible as a witness. Defense counsel pursued this line of questioning directly after Pair bolstered J. S.'s testimony. Because objecting to Pair's bolstering would be inconsistent with the strategy of showing that Pair was not to be

12

believed at all, we cannot conclude that the decision to cross-examine Pair, rather than to object to the bolstering, was an unreasonable trial strategy. See *Rawls v. State*, 315 Ga. App. 891, 896 (4) (730 SE2d 1) (2012) (no ineffective assistance when counsel failed to object to bolstering due to trial strategy to show that witnesses rushed to judgment); *Damerow v. State*, 310 Ga. App. 530, 537 (714 SE2d 82) (2011) ("Not objecting to testimony but instead subjecting it to cross-examination may be part of a reasonable trial strategy.") (citation and punctuation omitted). Accordingly, Barmore has failed to overcome the strong presumption that his trial counsel's performance fell within the range of professional norms.

Moreover, even if counsel had objected to the improper bolstering, Barmore has failed to show a reasonable probability that the testimony so prejudiced his defense that it affected the outcome of the trial. K. R.'s account of the incident remained consistent throughout – from her initial outcry to her friend and to Pair, her reporting of the incident to her mother, and the interview with the forensic examiner. Barmore also had a full opportunity to cross-examine K. R. at trial. And Barmore's counsel had a full opportunity to explore the inconsistencies between J. S.'s and her mother's recollections of the similar transactions on cross-examination, and he produced a witness who allegedly heard J. S. recanting her accusations against

13

Barmore. The trial court was also diligent in instructing the jury on the limitations of similar transaction evidence.[4] Accordingly, under these circumstances, we find no error in denying Barmore's motion for new trial on this ground. See *Strickland*, 311 Ga. App. at 404 (bolstering did not prejudice defense when victim's account remained consistent and defendant had opportunity to cross-examine her); *Alford v. State*, 320 Ga. App. 523, 529 (738 SE2d 124) (2013) (single, unresponsive remark not prejudicial when victim's account remained consistent, defendant had full opportunity to test her credibility on cross-examination, and another witness testified to similar incidents).

*Judgment affirmed. Andrews, P. J., and Dillard, J., concur.*

---

[4] The trial court gave the limiting instructions on similar transactions three times during the course of the trial – before Pair and J.S. testified and in the charge after the close of the evidence.