**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**January 24, 2024**

# In the Court of Appeals of Georgia

A23A1307. BUENRROSTRO v. THE STATE.

PIPKIN, Judge.

Following a jury trial, Luis Buenrrostro was convicted of two counts of aggravated child molestation and was sentenced to 25 years to serve in prison followed by life on probation. Buenrrostro appeals the trial court's denial of his motion for new trial, raising three claims of trial court error, numerous claims of ineffective assistance of trial counsel, and a claim of cumulative error. For the reasons discussed below, we affirm.

1. *Factual Background and Procedural History*

In November 2021, Buenrrostro was re-indicted[1] by a Fulton County grand jury on six counts of aggravated child molestation against C.R. Counts 1 through 3 of the indictment were identical to each other and charged Buenrrostro with criminal sexual acts committed on July 1, 2020. Specifically, Buenrrostro was charged with "unlawfully commit[ting] an immoral and indecent act to [C.R.], a child under the age of sixteen (16) years, by placing his mouth on her vagina, with the intent to arouse and satisfy [the] accused's sexual desires; said act involving an act of sodomy." Counts 4 through 6 of the indictment were, again, identical to each other, and charged Buenrrostro with committing criminal sexual acts on June 1, 2020. These counts alleged that Buenrrostro "unlawfully commit[ted] an immoral and indecent act to [C.R.], a child under the age of sixteen (16) years, by placing his penis in her anus, with the intent to arouse and satisfy [the] accused's sexual desires; said act involving an act of sodomy."

---

[1] As explained in the order denying Buenrrostro's motion for new trial, Buenrrostro was originally charged with committing two counts of child molestation and one count of aggravated child molestation "sometime between June 1 and July 1, 2020." This indictment, however, was dismissed based upon the trial court's grant of Buenrrostro's special demurrer to the indictment.

The evidence presented at trial showed that Buenrrostro and C.R. were cousins who lived across the street from each other. At all relevant times, Buenrrostro was 17 years old; C.R. was 12 years old at the start of the summer of 2020 and turned 13 on July 17, 2020. In August 2020, Buenrrostro sent C.R.'s older sister some text messages asking if he could send her pictures of his penis because he wanted to have sex with J.M., his 14-year-old girlfriend, and he wanted to "make sure that it wasn't small." Then, at Thanksgiving 2020, one of C.R.'s sisters found lewd Snapchat messages between Buenrrostro and C.R., wherein Buenrrostro described sexual acts he would like to try with C.R. and made numerous requests for her to come to his house. C.R.'s sister and mother confronted her about the messages, and C.R. disclosed that she and Buenrrostro had engaged in anal sex.

C.R. testified at trial and described the acts of anal and oral sodomy Buenrrostro committed against her. She testified that the abuse started when she was 12 years old and continued after her 13th birthday; however, she could not remember the exact dates that the molestation occurred.

Buenrrostro took the stand in his own defense, denied the allegations, and provided a partial alibi defense. Specifically, he testified that, during the summer of

2020, he worked with his father Monday through Saturday. He would wake up at 5 a.m., leave with his father around 6 a.m., work anywhere from 9 to 12 hours for his father's construction company, and go home; regarding the specific dates in the indictment, Buenrrostro testified that he was at work "until night time." He also testified that a friend of his created a Snapchat account for him in the summer of 2019 and that they both had access to that account; he denied sending any of the Snapchat messages to C.R.[2]

The jury acquitted Buenrrostro of Count 3 but found him guilty of all remaining counts. The trial court sentenced Buenrrostro to concurrent sentences of 25 years to serve followed by life on probation on Counts 1 and 4; the remaining counts were merged for sentencing purposes.

2. *Trial Court Errors*

On appeal, Buenrrostro alleges that the trial court erred by: (a) denying his amended special demurrer, (b) admitting extrinsic act evidence concerning J.M., and (3) charging the jury that the indicted offenses could be proven at any time within the

---

[2] The record reflects that the messages sent from Buenrrostro's Snapchat account to his cousins utilized nicknames that he called the girls.

statute of limitations even though Buenrrostro had provided an alibi at trial. We address each claim in turn.

(a) Buenrrostro contends that the trial court erred by denying his pre-trial amended special demurrer because the counts in his indictment were not sufficiently particular to "distinguish identical counts from one another." "A defendant who has timely filed a special demurrer is entitled to an indictment perfect in form and substance. In a post-conviction appeal of a trial court's pretrial ruling denying a special demurrer, however, we apply a harmless error standard of review." (Citations and punctuation omitted) *Huber v. State*, 368 Ga. App. 401, 408 (3) (890 SE2d 271) (2023). Indeed, a defendant "must show that he was prejudiced by being tried on a defective accusation; without harm, an erroneous overruling of a special demurrer is not a basis for reversal." (Citations and punctuation omitted.) *Andemical v. State*, 336 Ga. App. 661, 665 (2) (786 SE2d 238) (2016).[3]

Here, even assuming that the trial court erred in denying the special demurrer because Counts 1 through 3 were identical to one another as were Counts 4 through 6, Buenrrostro does not argue, nor is there anything in the record to indicate that he

---

[3] Instead, Buenrrostro argues, incorrectly, that no showing of prejudice is required for this claim.

was prejudiced by any alleged deficiencies in the indictment. As discussed above, Buenrrostro testified in his own defense that he could not have committed the crimes because he worked long hours during the entire summer of 2020, including the two specific days listed in the indictment. Moreover, Buenrrostro was only sentenced on two of the six charged counts and those counts specifically alleged different acts of sodomy. Consequently, this enumeration fails. See *O'Rourke v. State*, 327 Ga. App. 628, 633 (2) (760 SE2d 636) (2014) (affirming the overruling of a special demurrer to an indictment that alleged a range of dates that offense could have occurred where defendant failed to show that he was surprised or otherwise prejudiced by alleged deficiency in indictment).

(b) Next, Buenrrostro contends that the trial court erred by admitting messages of a sexually explicit nature between Buenrrostro and J.M. Specifically, Buenrrostro alleges that the messages were inadmissible under OCGA §§ 24-4-404 (b), 24-4-413, and 24-4-414 of the evidence code. However, nothing in the record or the briefs of the parties reflect that the complained of messages were actually admitted as evidence at trial. Accordingly, this claim is without merit.

(c) In his last claim of trial court error, Buenrrostro contends that the trial court plainly erred when it instructed the jury that the offenses charged could be proven on any date within the statute of limitations when Buenrrostro had presented an alibi defense. It is well settled that, to show plain error, an appellant

> must show an error: (1) that has not been "affirmatively waived"; (2) that is "clear or obvious"; and (3) that affected his "substantial rights." In other words, if an alleged error regarding a jury instruction has not been affirmatively waived, then the proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings.

(Citations and punctuation omitted.) *Jefferson v. State*, 360 Ga. App. 75, 76 (1) (860 SE2d 614) (2021). Applying this standard, we see no error let alone plain error.

Buenrrostro relies on the following language from our Supreme Court's decision in *Reed v. State*, 294 Ga. 877 (757 SE2d 84) (2014), to argue that the trial court clearly erred: "except where the exact date of the offense is alleged to be an essential element thereof or where the accused raises an alibi defense, any variance between the date listed in the indictment and the date on which the crime is proven to have occurred is of no consequence." Id. at 879 (3). Buenrrostro argues that this language constituted a settled legal rule supporting a jury charge "that [his] alibi defense required the State to prove the counts on the dates alleged in the indictment"

7

rather than the instruction given by the trial court "that the offenses could be proven on any date within the statute of limitations." We disagree.

As an initial matter, appellate counsel conceded at oral argument that the dates charged in the indictment were not material, and also agreed that this is a novel issue of law. These concessions defeat Buenrrostro's argument that the trial court committed clear and obvious error.[4] See *Williams v. State*, 315 Ga. 490, 496 (2) (883 SE2d 733) (2023) ("An error is plain if it is clear or obvious under current law. An error cannot be plain where there is no controlling authority on point and where the most closely analogous precedent leads to conflicting results." (citation omitted)).

Even if counsel had not conceded these points, however, we disagree that the language relied upon in *Reed* shows that the trial court erred in its instruction to the jury. The *Reed* decision emphasizes that "even though it has been held that a definite date of an offense should be alleged in an indictment, the State is not restricted to proof of the date stated. It is sufficient if the evidence demonstrates that the offense was committed at any time within the statute of limitation[]." Id. at 879 (3). Instead, when it comes to the interplay of the statute of limitation and a defendant's alibi

---

[4] The jury was not charged on the defense of alibi, and Buenrrostro does not claim that this amounted to plain error.

defense, well settled Georgia precedent states that "[a]libi evidence does not make the date alleged in the indictment material unless proof of a different date *effectively barred an alibi defense*." (Emphasis supplied.) *Lovelace v. State*, 241 Ga. App. 774, 775 (1) (527 SE2d 878) (2000). Here, Buenrrostro was not "effectively barred" from presenting an alibi defense because his testimony provided, at best, a partial alibi. Therefore, any deviation by the State from the specific dates charged in the indictment did not prejudice Buenrrostro's alibi defense. See *Pickstock v. State*, 235 Ga. App. 451, 451 (509 SE2d 717) (1998). To the extent that Buenrrostro claims that he "was surprised by any alleged variance between the allegata and the probata, it was incumbent upon him to seek a continuance or some other relief in the trial court." *Shindorf v. State*, 303 Ga. App. 553, 556 (2) (694 SE2d 177) (2010).

Accordingly, there is no error, let alone plain error, with the trial court's instruction of the jury that the State only needed to prove that the offenses occurred within the statute of limitation.

3. *Ineffective Assistance of Counsel*

Buenrrostro alleges that he received ineffective assistance of trial counsel by counsel's failure to: (a) strike venire person 40 from the jury panel, (b) request a jury

9

charge on alibi, (c) object to the trial court's refusal to instruct the jury on misdemeanor aggravated child molestation, and (d) subpoena C.R.'s records from the Department of Family and Children Services ("DFCS") for in camera inspection by the trial court. To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different. See *Strickland v. Washington*, 466 U. S. 668 (III) (104 SCt 2052, 80 LE2d 674) (1984). If the defendant fails to satisfy either prong of the *Strickland* test, this Court is not required to examine the other. See *Green v. State*, 291 Ga. 579, 580 (2) (731 SE2d 359) (2012).

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." (Citation omitted.) *Harrington v. Richter*, 562 U. S. 86, 104 (IV) (131 SCt 770, 178 LE2d 624) (2011). Indeed, "[t]rial tactics and strategy . . . are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Citation and punctuation omitted.) *McNair v. State*, 296 Ga. 181, 184 (2) (b) (766

SE2d 45) (2014). "In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012). With these principles in mind, we review Buenrrostro's claims of ineffective assistance.

(a) Buenrrostro contends that trial counsel was ineffective for failing to either move to strike Juror 40 from the venire for cause or to remove Juror 40 by use of a peremptory strike. The record shows that, during the statutory qualifying questions, Juror 40 indicated that he had potential bias and that his mind was not perfectly impartial between the State and the defense. However, upon further questioning by the prosecutor, Juror 40 stated, "Now[] that I thought about it I think I could be impartial," and when asked if "after hearing everything you've heard thus far[,] have you decided the guilt[] or innocence of this defendant," Juror 40 replied, "No." Later in voir dire, Juror 40 explained that he had a prior bad experience with law enforcement wherein he was wrongfully accused of being in possession of drugs. Juror 40 explained that, because of that bad experience, he felt "inferior" and he "tend[s]

11

to identify" and is "going to side with" the person who was arrested.[5] He also disclosed that his mother had been molested by a family member when she was young. The prosecutor asked Juror 40 if his mother's experience would prevent him from being a fair and impartial juror in the instant case, to which Juror 40 replied "It could be. I try to be fair and impartial but it could be." When asked if he was willing to wait for the evidence in the case "before you decide whether or not it could be," Juror 40 replied, "yes."

(i) Removal for Cause

Buenrrostro contends that Juror 40 made "statements wavering on impartiality" and expressed bias against the defense in the case, was never rehabilitated, and that trial counsel's failure to request that Juror 40 be removed for cause amounted to ineffective assistance. Pursuant to OCGA § 15-12-164 (d),

> [t]he court shall also excuse for cause any juror who from the totality of the juror's answers on voir dire is determined by the court to be substantially impaired in the juror's ability to be fair and impartial. The juror's own representation that the juror would be fair and impartial is to be considered by the court but is not determinative.

---

[5] Notably, Juror 40 referred to the person who was arrested and accused as "the victim."

"A juror can be disqualified for cause only if it can be shown that an opinion held by the potential juror is fixed and definite such that the potential juror would be unable to set aside the opinion and decide the case on the evidence or the court's charge upon the evidence." (Citation omitted.) *Barmore v. State*, 323 Ga. App. 377, 379-380 (1) (746 SE2d 289) (2013). "A prospective juror's doubt as to his or her own impartiality does not demand as a matter of law that he or she be excused for cause. . . . Nor is excusal required when a potential juror expresses reservations about his or her ability to put aside personal experiences." (Citations omitted.) *Holmes v. State*, 269 Ga. 124, 126 (2) (498 SE2d 732) (1998). And, "[i]n the context of an ineffective assistance of counsel claim, the question is whether considered from the perspective of voir dire and not from hindsight, counsel's failure to move to strike the juror for cause was objectively unreasonable." (Citation and punctuation omitted.) *Barmore*, 323 Ga. App. at 380 (1).

Here, though Juror 40 expressed some doubts and reservations about his ability to remain impartial and put aside his personal experience with his mother's prior trauma, he did not state that he had already formed an opinion about the case. Instead, he expressly affirmed that he had not formed an opinion about Buenrrostro's guilt or

innocence. Accordingly, Buenrrostro has failed to show that Juror 40 had an opinion so fixed or definite that he was unable to decide the case based upon the evidence and should have been stricken for cause. See *Byrd v. State*, 277 Ga. 554, 556 (2) (592 SE2d 421) (2004). And because Buenrrostro has failed to show that a motion to strike for cause would have been successful, then he cannot show that trial counsel was deficient for failing to move to strike Juror 40 for cause. See *Barmore*, 323 Ga. App. at 381 (1).

(ii) Use of Peremptory Strike

Buenrrostro also contends that trial counsel was ineffective for failing to use a peremptory strike to remove Juror 40 from the panel. It is well settled that,

> [t]rial counsel's decisions about which jurors to strike and which to keep are tactical. And counsel's decisions on matters of tactic and strategy, even if unwise, do not amount to ineffective assistance of counsel. Indeed, tactical decisions by counsel will not form the basis for an ineffective assistance claim unless the decisions are so patently unreasonable that no competent attorney would have chosen them.

(Citation omitted.) *Ware v. State*, 321 Ga. App. 640, 642 (3) (742 SE2d 156) (2013). Applying these standards, we cannot say that Buenrrostro has overcome the strong presumption that his counsel's decisions during jury selection were reasonable. The record shows that counsel had used all nine peremptory strikes prior to reaching Juror 40, and Buenrrostro has not put forth any evidence or argument that counsel's use of

14

his other peremptory strikes was unreasonable. Even assuming that counsel had a remaining peremptory strike to use on Juror 40, we cannot say that not utilizing that strike would have been so patently unreasonable that no competent attorney would have chosen to keep Juror 40 on the panel. Juror 40 testified that he had a prior bad experience with law enforcement and that, based upon this experience, he identified with persons who had been wrongfully arrested and accused. Given that trial counsel argued to the jury that law enforcement did not do a thorough criminal investigation and that Buenrrostro had been falsely accused of committing these crimes, we cannot say that trial counsel's jury selection was "so patently unreasonable that no competent attorney would have followed such a course." (Citation and punctuation omitted.) *Hicks v. State*, 295 Ga. 268, 276 (3) (b) (759 SE2d 509) (2014).

(b) Buenrrostro also argues that trial counsel was ineffective for failing to request a charge on alibi, his sole defense at trial. Assuming without deciding that trial counsel was deficient for failing to request this charge, Buenrrostro cannot prove prejudice. "The defense of alibi involves the impossibility of the accused's presence at the scene of the offense at the time of its commission. The range of the evidence in respect to time and place must be such as reasonably to exclude the possibility of

presence." OCGA § 16-3-40. Further, "[w]here the defense of alibi and the question of personal identity are virtually the same defense, the omission of the court to instruct separately on alibi is not error." *Herring v. State*, 238 Ga. 288, 289 (3) (232 SE2d 826) (1977). See also *Hill v. State*, 290 Ga. App. 140, 142 (2) (658 SE2d 863) (2008) (explaining that "alibi is not an affirmative defense; since the true effect of an alibi defense is to traverse the State's proof that the defendant committed the crime, the charge that the burden is on the state to prove that the defendant committed the crime beyond a reasonable doubt itself necessarily covers the question of whether the evidence of alibi was sufficient to create a reasonable doubt" (citation omitted.)).

Here, the trial court fully instructed the jury on identity, the burden of proof, the presumption of innocence, and grave suspicion. Moreover, Buenrrostro's alibi testimony did not establish the impossibility of his presence at the scene of the charged crimes. The evidence at trial showed that Buenrrostro and C.R. lived across the street from one another at the time of the alleged crimes; Buenrrostro also testified that, throughout the summer of 2020, he worked up to 12 hour days Monday through Saturday, but not Sunday. While Buenrrostro testified that he started work early on the days in question and continued working "until nighttime," he did not fully

16

account for his whereabouts that day. Based on the foregoing, we cannot say that Buenrrostro has shown a reasonable probability of a different outcome had the alibi instruction been given. See *Hollis v. State*, 359 Ga. App. 249, 254 (6) (b) (857 SE2d 254) (2021).

(c) During the charge conference, trial counsel requested that the court charge the jury on the lesser-included misdemeanor offense of aggravated child molestation, arguing that there was slight evidence to support the charge that C.R. was 13 years old at the time the abuse occurred and Buenrrostro was 17 years old. See OCGA § 16-6-4 (d) (2). The trial court denied the request to charge, finding no slight evidence to support it, and trial counsel did not object. Buenrrostro alleges that trial counsel was ineffective for failing to object to the trial court's ruling. We disagree.

OCGA § 16-6-4 (d) (2) provides that a person is guilty of the misdemeanor aggravated child molestation where, in relevant part, "[t]he victim is at least 13 but less than 16 years of age;" and "[t]he person convicted of aggravated child molestation is 18 years of age or younger *and is no more than four years older than the victim*." (Emphasis supplied.) Id. at (A), (B). The evidence presented below showed that C.R.'s date of birth is July 17, 2007, and that she was 12 years old during parts of

the summer of 2020, while the jury learned that Buenrrostro was 17 throughout the summer of 2020. Accordingly, C.R. was not "at least 13" when the abuse began. And as to the portion of time when C.R. was 13, the record shows that Buenrrostro was 17 years old at all relevant times, whereas C.R. was 12 when the abuse started and 13 when the abuse ended. Therefore, Buenrrostro is more than four years older than C.R., and the trial court correctly determined that there was no slight evidence to support the requested misdemeanor charge. Based on the foregoing, Buenrrostro has failed to show that trial counsel could have properly objected to the trial court's ruling, and, thus, failed to establish that trial counsel acted deficiently. See *Wesley v. State*, 286 Ga. 355, 356 (3) (a) (689 SE2d 280) (2010) (trial counsel cannot be deficient by failing to make a meritless objection).[6]

(d) Buenrrostro alleges that trial counsel was ineffective for failing to obtain C.R.'s DFCS records because, he argues, the records provided slight evidence to

---

[6]Buenrrostro also alleges that trial counsel was ineffective for failing to request a special verdict form for the jury to make factual findings concerning C.R.'s age at the time of the abuse. However, because Buenrrostro was not entitled to the misdemeanor jury instruction, he cannot show that trial counsel was deficient for failing to request a special verdict form on the issue of the victim's age.

support the requested instruction for misdemeanor aggravated child molestation. For the reasons discussed in Division 3 (c) above, however, this claim fails.[7]

4. Finally, Buenrrostro contends that the cumulative effect of the alleged errors of counsel and the court prejudiced the outcome of his trial. "Under *State v. Lane*, 308 Ga. 10 (838 SE2d 808) (2020), we must consider collectively the prejudicial effect, if any, of trial court errors, along with the prejudice caused by any deficient performance of counsel." (Citation and punctuation omitted.) *Talley v. State*, 314 Ga. 153, 165-166 (4) (875 SE2d 789) (2022). "To establish cumulative error, [Buenrrostro] must show that (1) at least two errors were committed in the course of the trial; and (2) considered together along with the entire record, the multiple errors so infected the jury's deliberation that they denied [Buenrrostro] a fundamentally fair trial." *Jackson v. State*, 317 Ga. 95, 107 (4) (891 SE2d 866) (2023). Here, we assumed one trial court error and two instances of deficient performance. That said, given our conclusions

---

[7] Buenrrostro also claims that trial counsel was ineffective for failing to obtain the DFCS records because, he contends, they included prior inconsistent statements made by C.R. concerning the allegations of molestation. However, the DFCS records specifically noted that all information included in the report was "secondhand information," and a review of the records shows that they did not include any statements made by C.R. Given the lack of evidentiary value of these records, Buenrrostro cannot show prejudice.

above and reviewing the record as a whole, we conclude that Buenrrostro has failed to establish that the combined prejudicial effect of these errors requires a new trial.

*Judgment affirmed. McFadden, P. J., and Dillard, P. J., concur.*